ORIGINAL

DAVID L. HENKIN #6876
ISAAC H. MORIWAKE #7141
EARTHJUSTICE
223 South King Street, Suite 400
Honolulu, Hawai'i 96813
Telephone No.: (808) 599-2436
Fax No.: (808) 521-6841
Email: dhenkin@earthjustice.org
imoriwake@earthjustice.org

Attorneys for Plaintiffs

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
AUG 12 2009
at 2 o'clock and 06 min. P M.
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAI'I

| | |
|---|---|
| MĀLAMA MĀKUA, a Hawai'i nonprofit corporation,<br><br>Plaintiff<br><br>v.<br><br>ROBERT M. GATES, Secretary of Defense; and PETE GEREN, Secretary of the United States Department of the Army,<br><br>Defendants. | Civil No. CV 09-00369 SOM LEK<br><br>COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF RE: DEFENDANTS' FAILURE TO COMPLETE STUDIES MANDATED UNDER 2001 AND 2007 SETTLEMENT AGREEMENTS |

COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF RE: DEFENDANTS' FAILURE TO COMPLETE STUDIES MANDATED UNDER 2001 AND 2007 SETTLEMENT AGREEMENTS

Plaintiff Mālama Mākua complains of defendants as follows:

## INTRODUCTION

1. This action seeks an order compelling compliance by the Secretary of Defense and the Secretary of the United States Department of the Army (hereinafter referred to collectively as "defendants") with obligations they voluntarily assumed when they entered into the October 4, 2001 Settlement Agreement and Stipulated Order ("2001 Settlement") and the January 8, 2007 Joint Stipulation Re: Partial Settlement of Plaintiff's Motion to Enforce the October 4, 2001 Settlement Agreement and Stipulated Order ("2007 Settlement"), both of which were entered in Mālama Mākua v. Gates, et al., Civ. No. 00-00813 SOM LEK (D. Haw.). Specifically, plaintiff Mālama Mākua seeks compliance with defendants' duties to complete as part of the preparation of the final environmental impact statement ("EIS") for military training activities at Mākua Military Reservation ("MMR"): (1) "subsurface archaeological surveys of all areas within the Company Combined-Arms Assault Course circumscribed by the south firebreak road," and (2) "studies to determine whether fish, limu [(seaweed)], shellfish, and other marine resources near Mākua Beach and in the muliwai [(estuarine ponds)] on which area residents rely for subsistence are contaminated by substances associated with the proposed training activities at MMR" and to evaluate "the potential that activities at MMR have contributed or will contribute

to any such contamination and whether the proposed training activities at MMR pose a human health risk to area residents that [sic] rely on marine resources for subsistence." 2007 Settlement ¶¶ 1, 6; see also 2001 Settlement ¶ 6(a), (c).

2. Mālama Mākua seeks a declaratory judgment that defendants violated the aforementioned obligations when they (1) issued a final EIS for MMR prior to completing archaeological surveys and contamination studies that comply with the settlements' requirements, (2) failed to put the mandated surveys and studies out for public review and comment, and (3) failed to incorporate in the final EIS an analysis of the results of the mandated surveys and studies, as well as responses to public comments thereon.

3. In addition, Mālama Mākua respectfully asks the Court to issue an order compelling defendants to remedy these violations by (1) withdrawing their final EIS and associated record of decision ("ROD"), (2) completing the required archaeological surveys and contamination studies as part of the preparation of a revised final EIS, (3) putting the required surveys and studies out for public review and comment, and (4) incorporating in a revised final EIS an analysis of the results of the mandated surveys and studies, as well as responses to all public comments on such studies and surveys.

4. Mālama Mākua further respectfully asks the Court to enforce paragraph 4(b) of the 2001 Settlement by enjoining defendants from conducting

any live-fire training at MMR until defendants complete an EIS that incorporates the mandated surveys and studies and publishes a ROD based thereon.

## JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction over the claims for relief in this action pursuant to 28 U.S.C. § 1346 (United States as defendant); 28 U.S.C. § 1361 (actions to compel an officer of the United States to perform his duty); 28 U.S.C. §§ 2201-02 (power to issue declaratory judgments in cases of actual controversy); and Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375 (1994).

6. Venue lies properly in this judicial district by virtue of 28 U.S.C. § 1391(e) because this is a civil action in which officers or employees of the United States or an agency thereof are acting in their official capacity or under color of legal authority, a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and plaintiff Mālama Mākua resides here.

## PARTIES

### A. Plaintiff

7. Plaintiff Mālama Mākua is a Hawai'i nonprofit corporation, whose members consist primarily of residents of the Wai'anae District of O'ahu. The organization's goals include restoration of the land at MMR, return of the land to appropriate traditional and cultural uses, and protection of the public from adverse impacts associated with military training-related activities at MMR. Members of

Mālama Mākua include native Hawaiian practitioners, community leaders, and educators who are actively involved in the land-use issues associated with MMR.

8. Mālama Mākua was originally organized in 1992 to oppose the Army's permit application to the Environmental Protection Agency to burn and detonate hazardous waste at MMR. Since then, Mālama Mākua and its members have continued actively to monitor the impacts of military activities at MMR.

9. Mālama Mākua and its members are committed to the preservation and perpetuation of native Hawaiian culture, traditional and customary Hawaiian practices, cultural sites and resources in the Mākua region, including at MMR.

10. Mālama Mākua and its members are working to protect and restore Hawaiian cultural sites at MMR, as well as to increase opportunities for cultural access to those sites. For example, in negotiating the 2001 Settlement, Mālama Mākua secured defendants' commitments to permit regular cultural access to MMR and to clear unexploded ordnance from high priority sites to increase opportunities for cultural access.

11. Mālama Mākua has long been concerned about the destruction of cultural sites at MMR associated with defendants' military training and associated activities. To ensure that both defendants and the public would have accurate information about the full extent of the cultural treasures threatened by proposed military activities at MMR, Mālama Mākua secured defendants' commitment in the 2001 Settlement and 2007 Settlement to complete, as part of the preparation of

the EIS for military training activities at MMR, subsurface archaeological surveys of all areas within the Company Combined Arms Assault Course ("CCAAC") training area circumscribed by the south firebreak road, with the exception of areas suspected of containing improved conventional munitions ("ICMs").

12. Mālama Mākua and its members have also long been concerned about the potential for military training-related activities at MMR to contaminate marine resources on which Wai'anae Coast residents – including members of Mālama Mākua – rely for subsistence. To ensure that these potential impacts were adequately investigated and the results of those investigations disclosed to the public, Mālama Mākua secured defendants' commitment in the 2001 Settlement to complete, as part of the preparation of the EIS for military training activities at MMR, "studies of potential contamination of soil, surface water, and ground water, and of potential impacts on air quality, associated with the proposed training activities at MMR." 2001 Settlement ¶ 6(a). Mālama Mākua further secured defendants' agreement that, should the initial studies reveal the likelihood that any contamination has been transported or is being transported "beyond the boundaries of MMR that may contaminate the muliwai, or any marine resource or wildlife on or near Mākua Beach," defendants would "undertake additional studies of these resources," including "testing of fish, limu and other marine resources on which area residents rely for subsistence." Id.

13. Since the entry of the 2001 Settlement, Mālama Mākua and its members have worked diligently to secure defendants' compliance with their obligations to complete the required archaeological surveys and contamination studies, including filing a motion to enforce these obligations following the release of the draft EIS, which resulted in a reaffirmation and clarification of defendants' duties in the 2007 Settlement.

14. Mālama Mākua and its members conduct public education programs to assist the Wai'anae Coast community and other residents of the State of Hawai'i in addressing the cultural and public health issues associated with military occupation and use of MMR. Mālama Mākua and its members have organized and attended public meetings and events focused on MMR, written articles about MMR and produced videotapes of meetings and events in the Mākua region, including MMR. Mālama Mākua and its members have made, and continue to make, presentations to national organizations on the cultural significance of Mākua and have conducted, and continue to conduct, site visits of the area. Moreover, Mālama Mākua and its members have made, and continue to make, presentations on public health threats posed by military activities at MMR.

15. Mālama Mākua and its members intend to continue their efforts to protect and restore Mākua and, whenever possible, to increase and expand their use of MMR. Mālama Mākua and its members also intend to continue their efforts to protect the public from, and inform the public about, the health threats posed by

military activities at MMR and to ensure that marine resources at Mākua are safe for members of the public, including members of Mālama Mākua, to consume. The above-described religious, cultural, economic, subsistence and educational interests of Mālama Mākua and its members, have been, are being, and, unless the relief prayed herein is granted, will continue to be adversely affected and irreparably injured by the defendants' continued refusal to comply with their obligations under the 2001 Settlement and the 2007 Settlements to complete the specified archaeological surveys and contamination studies, as is more fully set forth below. The individual interests of plaintiff's members as well as its organizational interests are thus directly and adversely affected by defendants' unlawful actions

B. Defendants.

16. Defendant Robert M. Gates is the Secretary of Defense, and is sued herein in his official capacity. He has the ultimate responsibility to ensure that the Army's actions conform to the requirements of the 2001 Settlement and the 2007 Settlement. If ordered by the Court, Secretary Gates has the authority and ability to remedy the harm inflicted by defendants' noncompliance with the duties they voluntarily assumed when they entered into the 2001 Settlement and the 2007 Settlement.

17. Defendant Pete Geren is the Secretary of the United States Department of the Army, and is sued herein in his official capacity. He has the responsibility to ensure that the Army's actions conform to the requirements of the 2001 Settlement and the 2007 Settlement. If ordered by the Court, Secretary Geren has the authority and ability to remedy the harm inflicted by the Army's noncompliance with the duties it voluntarily assumed when it entered into the 2001 Settlement and the 2007 Settlement.

## BACKGROUND FACTS

### A. Defendants Commit In The 2001 Settlement To Complete Subsurface Archaeological Surveys And Marine Resources Contamination Studies As Part Of The EIS Process.

18. On December 20, 2000, Mālama Mākua filed a lawsuit in this Court, entitled Mālama Mākua v. Rumsfeld, Civ. No. 00-00813 SOM LEK, alleging that defendants' failure to prepare an EIS for military training activities proposed for MMR violated the National Environmental Policy Act ("NEPA").

19. On October 4, 2001, the parties signed and this Court approved a settlement resolving Mālama Mākua's claims. Among other things, the 2001 Settlement requires defendants to "diligently pursue completion of an EIS" for proposed military training activities at MMR. 2001 Settlement ¶ 2.

20. The 2001 Settlement provides that, "[i]n the event defendants fail to complete the EIS and publish in the Federal Register a ROD" by October 4, 2004,

"no live fire training shall be conducted at MMR until defendants complete the EIS and publish a ROD." Id. ¶ 4(b).

21. To ensure the EIS would provide information responsive to specific community concerns about potential environmental impacts of live-fire training and associated activities at MMR, the 2001 Settlement provides that, "[a]s part of the preparation of the EIS," defendants, "by and through [the Army's 25th Infantry Division]," must fill gaps in existing knowledge by carrying out various enumerated studies. Id. ¶ 6.

22. Paragraph 6(a) of the 2001 Settlement focuses on answering community questions about the potential for hazardous substances associated with military activities at MMR to contribute to contamination of marine resources on which Wai'anae Coast residents rely for subsistence. It provides for defendants to use a phased approach to carrying out contamination studies. In the first phase, defendants were obliged to "[c]omplete studies of potential contamination of soil, surface water, and ground water, and of potential impacts on air quality" to "evaluate whether there is the potential for any contamination to be transported beyond the boundaries of MMR." Id. ¶ 6(a).

23. If the initial contamination studies reveal the likelihood that any pollutants are currently being transported beyond MMR's boundaries or that such off-site transport has occurred in the past, the 2001 Settlement requires defendants

to "undertake additional studies," testing for contamination "fish, limu and other marine resources on which area residents rely for subsistence." Id.

24. The 2001 agreement mandates "a 60-day public comment period on the scope and protocol" of the contamination studies. Id.

25. Paragraph 6(c) of the 2001 Settlement requires defendants, as part of the process of preparing the EIS, to fill gaps in available information about archaeological resources that might be destroyed or damaged by live-fire training at MMR. Among other things, paragraph 6(c) requires defendants to conduct and complete "subsurface archaeological surveys of all areas within the CCAAC training area circumscribed by the south firebreak road," with the caveat that "[t]here will be no archaeological surveys of areas suspected of containing [ICMs] without the appropriate waiver from the Headquarters, Department of the Army." Id. ¶ 6(c).

26. Paragraph 9 of the 2001 Settlement requires defendants to "provide technical assistance to Mālama Mākua and other members of the Wai'anae Coast community to help them better understand the technical issues and study protocols to be used during the NEPA process at MMR" and establishes a $50,000 fund for that purpose. Id. ¶ 9(a). It further provides that "[t]his assistance shall be provided by a technical assistant or assistants, who will review the technical issues and study protocols to be used during the preparation of the EIS and provide input

to Mālama Mākua, other members of the Wai‘anae Coast community and defendants regarding same." Id.

B. The 2007 Settlement Reaffirms And Clarifies Defendants' Duty To Complete Subsurface Surveys And Contamination Studies Prior To Finalizing The EIS.

27. On January 13, 2006, following the release of the draft EIS for proposed training at MMR, Mālama Mākua brought a motion to enforce in this Court that challenged, among other things, defendants' failure to put out for public review and comment the contamination studies and archaeological surveys required pursuant to paragraphs 6(a) and (c), respectively, of the 2001 Settlement.

28. On January 8, 2007, this Court approved a partial settlement of Mālama Mākua's motion to enforce that resolved its claims regarding defendants' violations of paragraphs 6(a) and (c) of the 2001 Settlement.

29. The 2007 Settlement reaffirms defendants' obligation to complete, "as part of the preparation" of the EIS for military training activities at MMR, "subsurface archaeological surveys of all areas within the [CCAAC] circumscribed by the south firebreak road," except for the "area within the firebreak road identified as containing [ICMs]," which shall be surveyed only with the appropriate waiver from Army Headquarters. 2007 Settlement ¶ 1.

30. The 2007 Settlement provides that subsurface archaeological surveys would not be "conducted under conditions that an Army Explosives Ordnance

('EOD') Safety Officer determines are too dangerous." Id. It further specifies that, "[s]hould safety concerns arise, the parties will meet and confer in a good faith attempt to resolve the concerns, and the EOD Safety Officer will provide an explanation for his or her ultimate decision." Id.

31. The 2007 Settlement also reaffirms defendants' obligation to complete, "as part of the preparation" of the EIS for military training activities at MMR, "one or more studies to determine whether fish, limu, shellfish, and other marine resources near Mākua Beach and in the muliwai on which area residents rely for subsistence are contaminated by substances associated with the proposed training activities at MMR." Id. ¶ 6.

32. To reach the partial settlement, defendants further agreed "to test the marine resources" for over forty chemicals that defendants' prior studies had identified in the muliwai at Mākua Beach and/or in surface water flowing out of MMR. Id.

33. The 2007 Settlement requires defendants to "evaluate the potential that activities at MMR have contributed or will contribute to any … contamination" of marine resources on which Wai'anae Coast residents rely for subsistence "and whether the proposed training activities at MMR pose a human health risk to area residents [who] rely on marine resources for subsistence." Id.

34. The 2007 Settlement provides that "[d]efendants shall put out the archaeological surveys conducted pursuant to paragraph 1 and the marine

resources studies conducted pursuant to paragraph 6 for public review and comment … pursuant to 40 C.F.R. § 1502.19 and pt. 1503." Id. ¶ 11. Defendants are further obliged to "hold at least one public meeting to receive comments" on the archaeological surveys and contamination studies. Id. ¶ 12.

35. The 2007 Settlement states that the technical assistance funds provided in paragraph 9 of the 2001 Settlement "may be used for technical assistance to facilitate and inform the public's participation and comment during the public comment periods described in this Stipulation." Id. ¶ 14.

36. The 2007 Settlement mandates that defendants "incorporate in the final EIS an analysis of the results of the archaeological surveys conducted pursuant to paragraph 1 and the marine resources studies conducted pursuant to paragraph 6." Id. ¶ 13. Defendants are also obliged to "assess, consider and respond to all public comments on such studies and surveys pursuant to 40 C.F.R. § 1503.4." Id.

C. Defendants Fail To Complete The Required Archaeological Surveys And Contamination Studies Prior To Issuing A Final EIS.

1. Archaeological Subsurface Surveys.

37. On or about February 2, 2007, defendants put out for public review a document entitled "Archaeological Subsurface Survey Within The Company Combined Arms Assault Course (CCAAC) Circumscribed By The South Firebreak Road, Makua Military Reservation, Mākua Ahupua'a, Wai'anae District, O'ahu

Island, Hawai'i (TMK 8-2-01:020)" (hereinafter, "2007 Archaeological Subsurface Survey").

38. In carrying out the 2007 Archaeological Subsurface Survey, defendants failed to carry out any subsurface surveys whatsoever in several areas within the south firebreak road and outside of the ICM area, including one bordering the ICM area on the south and southwest and another to the south of sites 4543 and 4542. At no time prior to the release of the final EIS did defendants invoke paragraph 1 of the 2007 Settlement and allege that an Army EOD Safety Officer had concluded that conditions within these areas were too dangerous to conduct subsurface archaeological surveys. Moreover, the parties never met and conferred in a good faith effort to resolve any such concerns.

39. Even in the areas the 2007 Archaeological Subsurface Survey purported to cover, the survey's design was inadequate to provide a representative sample of the designated survey area. Among other flaws, defendants failed to devise a sampling methodology adequate to determine recovery probabilities (i.e., the likelihood of finding subsurface features) for the types of subsurface features that past subsurface investigations indicate are likely to be found at Mākua (e.g., imu (earthen ovens), post holes, tools, and other artifacts).

40. Defendants further rendered their subsurface survey meaningless when, after developing a sampling plan, they did not fully implement it. Defendants determined they needed 350 excavations to carry out their sampling

plan, but failed to complete that field work, with 73 of the planned excavations (over 20%) not carried out due to a variety of factors. Thus, even assuming arguendo that the methodology for the 2007 Archaeological Subsurface Survey were otherwise acceptable, field work for this project was never completed.

41. Because of its many flaws, the 2007 Archaeological Subsurface Survey fails to provide accurate information regarding the nature and extent of the subsurface archaeological resources within the CCAAC that would be threatened by resumption of live-fire training at MMR, as the parties intended when they entered into the 2001 Settlement and 2007 Settlement.

2. Marine Resources Contamination Studies.

42. On or about February 2, 2007, defendants put out for public review a marine resources study (hereinafter "2007 Marine Resources Study") that addressed contamination of only fish and limu.

43. On or about January 14, 2009, defendants put out for public review a revised marine resources study (hereinafter "2009 Marine Resources Study") that expanded on the 2007 Marine Resources Study to include a discussion of shellfish.

44. The 2009 Marine Resources Study's exclusive focus on shellfish, fish, and limu violated the terms of the 2007 Settlement, which requires that marine resources other than shellfish, fish, and limu be studied and tested.

45. Moreover, while the 2009 Marine Resources Study analyzes limu that defendants gathered at Mākua, defendants do not know what species – and, in some cases, what genus – of limu they sampled, and they acknowledge that none of the limu species they tested were edible. The 2009 Marine Resources Study therefore fails to satisfy the 2007 Settlement's requirement to study and test limu "on which area residents rely for subsistence." 2007 Settlement ¶ 6.

46. The 2009 Marine Resources Study suffers from numerous additional, fatal flaws. Among other things, defendants failed to: (1) perform standard analyses to determine whether the arsenic that was detected in marine resources at Mākua is present in its highly toxic, inorganic form or in the less toxic, organic form; (2) gather and analyze limu from any location other than Mākua to determine background levels of contamination; (3) gather the same species from both Mākua and background locations to allow for meaningful comparisons of the levels of contaminants detected; (4) gather species of fish, shellfish, and other marine resources that are present only in the early morning or at night to determine whether these important subsistence resources are contaminated; and (5) select uncontaminated "background" locations that would allow accurate assessment of the extent to which military activities at MMR have contributed or will contribute to contamination of marine resources used for subsistence.

47. The 2009 Marine Resources Study's pervasive methodological flaws render it inadequate to "evaluate the potential that activities at MMR have

contributed or will contribute" to contamination of marine resources on which Wai'anae Coast residents rely for subsistence or to determine "whether the proposed training activities at MMR pose a human health risk to area residents who rely on marine resources for subsistence," as the 2007 Settlement Agreements requires. Id.

48. Mālama Mākua used technical assistance funds pursuant to paragraph 9 of the 2001 Settlement to retain experts to evaluate defendants' 2007 and 2009 Marine Resources Studies, including the associated draft study protocols, and to provide comments to defendants identifying the studies' deficiencies and suggestions for remedying them. Technical assistance funds have also been used by other community groups and organizations on the Wai'anae Coast to evaluate and comment on technical studies related to the EIS for MMR. Cumulatively, these reviews have exhausted the $50,000 in technical assistance funding established in the 2001 Settlement.

3. Issuance Of Final EIS Without Required Surveys And Studies.

49. Pursuant to paragraph 15(b) of the 2001 Settlement, on May 1, 2007 and again on June 4, 2009, Mālama Mākua provided written notice to defendants regarding the violations discussed herein.

50. In subsequent negotiations, the Army denied that any violations had occurred and refused to take any steps to address Mālama Mākua's concerns.

51. Instead, on or about June 5, 2009, defendants issued a final EIS for MMR, without first having completed archaeological surveys and contamination studies that comply with the settlements' requirements, put those surveys out for public review and comment, and incorporated in the final EIS an analysis of the results of the mandated surveys and studies, as well as responses to public comments thereon.

52. On or about July 16, 2009, defendants issued a ROD based on their incomplete final EIS, in which they announced their decision to resume live-fire training at MMR.

## FIRST CLAIM FOR RELIEF

(Failure To Complete Subsurface Archaeological Surveys)

53. Plaintiff realleges, as if fully set forth herein, each and every allegation in the preceding paragraphs of this Complaint.

54. Defendants have failed to comply with paragraph 6(c) of the 2001 Settlement and paragraph 1 of the 2007 Settlement, which require defendants to complete, as part of the preparation of the final EIS for military training activities at MMR, "subsurface archaeological surveys of all areas within the Company Combined-Arms Assault Course circumscribed by the south firebreak road," other than the ICM area. 2007 Settlement ¶ 6(c).

## SECOND CLAIM FOR RELIEF

(Failure To Complete Marine Resources Contamination Studies)

55. Plaintiff realleges, as if fully set forth herein, each and every allegation in the preceding paragraphs of this Complaint.

56. Defendants have failed to comply with paragraph 6(a) of the 2001 Settlement and paragraph 6 of the 2007 Settlement, which require defendants to complete, as part of the preparation of the final EIS for military training activities at MMR, "studies to determine whether fish, limu, shellfish, and other marine resources near Mākua Beach and in the muliwai on which area residents rely for subsistence are contaminated by substances associated with the proposed training activities at MMR" and to evaluate "the potential that activities at MMR have contributed or will contribute to any such contamination and whether the proposed training activities at MMR pose a human health risk to area residents [who] rely on marine resources for subsistence." Id. ¶ 6(a).

## THIRD CLAIM FOR RELIEF

(Failure To Seek Public Input On Required Archaeological Surveys And Contamination Studies)

57. Plaintiff realleges, as if fully set forth herein, each and every allegation in the preceding paragraphs of this Complaint.

58. Defendants failed to comply with their duty under paragraph 11 of the 2007 Settlement to put out the subsurface archaeological surveys required pursuant

to paragraph 1 and the marine resources studies required pursuant to paragraph 6 "for public review and comment … pursuant to 40 C.F.R. § 1502.19 and pt. 1503." Id. ¶ 11. Defendants further failed to comply with their duty under paragraph 12 of the 2007 Settlement to "hold at least one public meeting to receive comments" on the archaeological surveys and contamination studies. Id. ¶ 12.

## FOURTH CLAIM FOR RELIEF

(Failure To Incorporate Required Archaeological Surveys And Contamination Studies Into Final EIS)

59. Plaintiff realleges, as if fully set forth herein, each and every allegation in the preceding paragraphs of this Complaint.

60. Defendants' failures to "incorporate in the final EIS an analysis of the results of the archaeological surveys [required] pursuant to paragraph 1 and the marine resources studies [required] pursuant to paragraph 6" and to "assess, consider and respond to all public comments on such studies and surveys pursuant to 40 C.F.R. § 1503.4" violate paragraph 13 of the 2007 Settlement. Id. ¶ 13.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief as follows:

1. For a declaratory judgment that defendants have violated:

a. Paragraph 6(c) of the 2001 Settlement and paragraph 1 of the 2007 Settlement, with respect to subsurface archaeological surveys within the CCAAC;

b. Paragraph 6(a) of the 2001 Settlement and paragraph 6 of the 2007 Settlement, with respect to contamination studies of fish, limu, shellfish, and other marine resources near Mākua Beach and in the muliwai on which area residents rely for subsistence;

c. Paragraphs 11 and 12 of the 2007 Settlement, with respect to public review of, and comment on, the required archaeological surveys and contamination studies; and

d. Paragraph 13 of the 2007 Settlement, with respect to incorporating the required archaeological surveys and contamination studies into the final EIS;

2. For an order compelling defendants to remedy their violations of the 2001 Settlement and 2007 Settlement by (1) withdrawing their final EIS and associated ROD, (2) completing the required archaeological surveys and contamination studies as part of the preparation of a revised final EIS, (3) putting the required surveys and studies out for public review and comment, and (4) incorporating in a revised final EIS an analysis of the results of the mandated surveys and studies, as well as responses to all public comments on such studies and surveys;

3. For an order requiring defendants to provide additional funding to retain technical assistants pursuant to paragraph 9 of the 2001 Settlement to review the required archaeological surveys and contamination studies and provide input to Mālama Mākua, other members of the Wai'anae Coast community and defendants regarding same;

4. For an order enforcing paragraph 4(b) of the 2001 Settlement by enjoining defendants from conducting any live-fire training at MMR until defendants complete an EIS that incorporates the mandated surveys and studies and publishes a ROD based thereon;

5. For the Court to retain continuing jurisdiction to review defendants' compliance with all judgments and orders entered herein;

6. For such additional judicial determinations and orders as may be necessary to effectuate the foregoing;

7. For an award of plaintiff's costs of litigation, including reasonable attorneys' fees; and

8. For such other and further relief as the Court may deem just and proper to effectuate a complete resolution of the legal disputes between plaintiff and defendants.

\\

\\

\\

DATED: Honolulu, Hawai‘i, August 12, 2009.

EARTHJUSTICE
David L. Henkin
Isaac H. Moriwake
223 S. King Street, Suite 400
Honolulu, Hawai‘i 96813-4501

DAVID L. HENKIN
Attorneys for Plaintiff Mālama Mākua