# Defendants' Exhibit 1

ORIGINAL

ELLIOT ENOKI, United States Attorney
THEODORE G . MEEKER, Assistant United States Attorney
District of Hawai`i
Room 6-100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawai`i 96850

JOHN C. CRUDEN, Acting Assistant Attorney General
STEPHEN G. BARTELL, Trial Attorney
General Litigation Section
Environment & Natural Resources Div.
U.S. Department of Justice
P.O. Box 663
Washington, D. C. 20044-0663

Attorneys for Defendants

LODGED

OCT 04 2001 1:20 A

CLERK, U. S. DISTRICT COURT
DISTRICT OF HAWAII

PAUL H. ACHITOFF #5279
DAVID L. HENKIN #6876
D. KAPUA ʻALA SPROAT #7182
EARTHJUSTICE LEGAL DEFENSE FUND
223 South King Street, Suite 400
Honolulu, Hawai`i 96813

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAI`I

| | |
|---|---|
| MĀLAMA MĀKUA, a Hawai`i non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>DONALD H. RUMSFELD, Secretary of Defense; and THOMAS E. WHITE, Secretary of the United States Department of the Army,<br><br>Defendants. | Civil No. 00-00813 SOM-LEK<br><br>SETTLEMENT AGREEMENT AND STIPULATED ORDER |

SETTLEMENT AGREEMENT AND STIPULATED ORDER

WHEREAS, plaintiff Mālama Mākua filed this action alleging that the failure of defendants Donald H. Rumsfeld, Secretary of Defense, and Thomas E. White, Secretary of the United States Department of the Army, to prepare an environmental impact statement ("EIS") for military training activities proposed for the Mākua Military Reservation ("MMR") violates the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*, and its implementing regulations;

WHEREAS, on July 16, 2001, this Court, upon plaintiff's motion for preliminary injunction, enjoined defendants from conducting live-fire military training at MMR, pending the Court's final disposition of this case;

WHEREAS, the parties have agreed to enter into this Settlement Agreement ("Agreement"), without any admission of fact or law, which they consider to be a just, fair, adequate and equitable resolution of the claims raised in this action; and,

WHEREAS, it is in the interest of the public, the parties, and judicial economy to resolve the issues in this action without protracted litigation;

NOW, THEREFORE, the parties to this Agreement ("Parties") agree, and the Court orders, as follows:

1. Defendants will commence preparation and diligently pursue completion of an EIS in accordance with NEPA and its implementing regulations. The EIS will address, among other things, the potential direct, indirect and cumulative environmental impacts associated with the proposal to resume military training activities at MMR.

2. Prior to completion of the EIS required under this Agreement and the publication in the Federal Register of a Record of Decision ("ROD") regarding the proposal to resume

military training at MMR, the U.S. Army and other Department of Defense ("DoD") components will be permitted to carry out:

a. Up to a total of sixteen (16) Company Combined Arms Live-Fire Exercises ("CALFEXs") at MMR in the first twelve (12) months immediately following this Court's approval of this Agreement;

b. Up to a total of nine (9) CALFEXs at MMR in the second year (the following twelve (12) months); and

c. Up to a total of twelve (12) CALFEXs at MMR in the third year (again, the following twelve (12) months).

3. The CALFEXs authorized pursuant to paragraph 2 will be as described in section 2 of the May 15, 2001 Supplemental Environmental Assessment for Routine Training at Makua Military Reservation and PFC Pilila`au Complex ("SEA"), with the following restrictions: all training will cease in the event of (1) any training-related fire outside the south firebreak road that surrounds the Company Combined-Arms Assault Course ("CCAAC"), or (2) any training-related damage to any archeological or cultural site. Defendants shall report any training-related damage to cultural sites to the State Historical Preservation Officer ("SHPO") and may resume training only after reporting the damage to the SHPO and implementing all mitigation measures required by the Programmatic Agreement, executed by the 25th Infantry Division (Light) ("25th ID (L)") and the U.S. Army, Hawaii on July 24, 2000. If a training-related fire starts outside of the south firebreak road, defendants shall reinitiate consultation with the U.S. Fish and Wildlife Service ("FWS") pursuant to Endangered Species Act ("ESA") section 7, 16 U.S.C. § 1536, as required by the Biological Opinion, dated July 23, 1999, and may resume training only after completing that consultation and in compliance with any conditions, excluding

recommendations, FWS may impose. Defendants shall promptly report any training-related fire outside the south firebreak road or any training-related damage to any archeological or cultural site to plaintiff's counsel, Earthjustice Legal Defense Fund, in writing (at 223 South King Street, Suite 400, Honolulu, Hawai`i 96813).

4. a. Defendants will complete the EIS as soon as possible. Defendants shall promptly notify plaintiff's counsel, Earthjustice Legal Defense Fund, in writing (at 223 South King Street, Suite 400, Honolulu, Hawai`i 96813), when they complete the EIS required by this Agreement and shall promptly deliver copies of the EIS and ROD prepared pursuant to this Agreement.

b. In the event defendants fail to complete the EIS and publish in the Federal Register a ROD within three years from the date this Court approves this Agreement, no live fire training shall be conducted at MMR until defendants complete the EIS and publish a ROD.

c. The Parties reserve the right to seek to modify the limitations on training set forth in this Agreement due to changed circumstances. In the event that the Parties do not reach agreement on a proposed modification, either Party may bring a motion to modify the training limitations. Any such motion brought by defendants will be subject to the standards for injunctive relief in cases where a NEPA violation has been found. The provisions in this paragraph do not limit the Parties' right to seek relief under Federal Rule of Civil Procedure 60.

5. Defendants will hold public meetings both as part of the NEPA scoping process and to receive comments on the draft EIS. These meetings will provide meaningful opportunities for the public to ask questions, raise concerns, and make comments. Meetings will be scheduled at times (i.e., evenings and weekends) and places (i.e., on the Wai`anae coast) that are convenient for the working people of the Wai`anae Coast. All oral comments and testimony

offered at these meetings will be transcribed by a court reporter. Defendants will make good faith efforts to obtain the services of a court reporter who is capable of transcribing the Hawaiian language. In the event a court reporter can be retained who is capable of transcribing the Hawaiian language, all oral comments and testimony offered at these meetings will be transcribed in English or Hawaiian, depending on the language used by the speaker. In the event defendants are unable to retain a court reporter who is capable of transcribing the Hawaiian language, all oral comments and testimony offered at these meetings will be audiotape recorded for later transcription and translation of comments and testimony offered in Hawaiian. At a minimum, one copy of the transcript of each meeting (including English translations of any comments or testimony offered in Hawaiian, provided a translator can be retained who is capable of transcribing the Hawaiian language) will be provided promptly and free of charge to plaintiff's counsel for the use of Mālama Mākua, with an additional copy made available promptly and free of charge to the public at the Wai`anae public library.

6. As part of the preparation of the EIS for military training activities at MMR, the defendants, by and through the 25th ID (L), shall:

a. Complete studies of potential contamination of soil, surface water, and ground water, and of potential impacts on air quality, associated with the proposed training activities at MMR. These studies will evaluate whether there is the potential for any contamination to be transported beyond the boundaries of MMR that may contaminate the muliwai, or any marine resource or wildlife on or near Mākua Beach. If the studies reveal the likelihood that such contamination is occurring or has occurred, defendants shall undertake additional studies of these resources (e.g., testing of fish, limu and other marine resources on which area residents rely for subsistence; testing of the muliwai for contamination). Defendants shall provide a 60-day

public comment period on the scope and protocol of these studies. The public comment periods on study protocols shall take place after the scoping process required pursuant to 40 C.F.R. § 1501.7 and shall be publicized pursuant to 40 C.F.R. § 1506.6.

b. Complete a Traditional Cultural Places ("TCP") Survey, as defined by federal law, that follows the State of Hawai`i Office of Environmental Quality Control's Guidelines for Assessing Cultural Impacts (Nov. 19, 1997). The contractor performing the TCP survey shall be chosen from the Office of Environmental Quality Control's Directory of Cultural Impact Assessment Providers (Aug. 26, 1998).

c. Complete (1) surface and subsurface archeological surveys of all areas within the CCAAC training area circumscribed by the south firebreak road and (2) surface archaeological surveys of all the Surface Danger Zone ("SDZ") areas, as shown in Figure 2-2 of the SEA, located outside the south firebreak road. There will be no archaeological surveys of areas suspected of containing Improved Conventional Munitions ("ICMs") without the appropriate waiver from the Headquarters, Department of the Army ("HQDA"). The 25th ID (L) shall make good faith efforts to secure waivers from the HQDA to perform archaeological surveys of areas suspected of containing ICMs. The surface survey outside the south firebreak road will take place only after the area has been burned and surveyed for unexploded ordnance ("UXO"), and will be subject to any limitations imposed by FWS in ESA section 7 consultation and any limitations on clearance of UXO based on technical feasibility. If the surface archaeological survey or information from remote sensing or other sources indicates the likely presence of a subsurface archaeological site outside the south firebreak road, the 25th ID (L) shall conduct a subsurface survey of that potential site, subject to issuance of any required ICM waiver, technical feasibility, specific funding for UXO clearance (which the 25th ID (L) shall

make good faith efforts to secure and defendants shall provide to the maximum extent practicable), and any limitations imposed by FWS in ESA section 7 consultation. No archaeological subsurface surveys will be conducted under conditions that an Army Explosive and Ordnance ("EOD") Safety Officer determines are too dangerous. The EOD Safety Officer will be the final arbiter on the matter of safety.

7. If the studies described in paragraph 6a, supra, reveal the potential for off-site soil, air, ground water or surface water contamination, defendants, through the 25th ID (L), shall undertake a long-term program to monitor such contamination. The scope and duration of the monitoring program will be addressed in the protocols as developed by defendants. Defendants shall provide a 60-day public comment period on the scope of, and protocol for, such monitoring.

8. Defendants, through the 25th ID (L), shall address UXO at MMR in the following manner:

a. In order to reduce the risk to individuals on Mākua Beach and Farrington Highway, the 25th ID (L) shall finalize and submit to HQDA for approval a plan for UXO clearance for the area within MMR extending 1,000 meters mauka (towards the mountains) from Farrington Highway. The 25th ID (L) shall continue to make good faith efforts to secure the necessary funding for this phase of UXO clearance, beginning with a request for funding in Fiscal Year 2002. Subject to specific funding for UXO clearance, safety requirements and any limitations imposed by FWS in ESA section 7 consultation, clearance activities in this area shall be completed as soon as practicable.

b. In addition, within one year of the date of settlement, the 25th ID (L) shall identify additional, high priority areas at MMR for UXO clearance, with the focus on increasing access to cultural sites. The 25th ID (L) shall provide meaningful opportunities for the people of

the Wai`anae Coast to participate in identifying and prioritizing these areas, including releasing draft plans for public review and holding meetings at which the public will have the chance to ask questions, raise concerns and make comments and suggestions. After identifying these additional, high priority areas, the 25th ID (L) shall make good faith efforts promptly to develop a plan and secure specific funding for the clearance of UXO from these areas to provide safe, controlled access to identified cultural sites. The clearance plan and activities are subject to any limitations imposed by FWS in ESA section 7 consultation, safety requirements, available funds specifically for UXO clearance, and available and appropriate technologies and methods.

c. Beginning on the first anniversary of this Agreement, and every year thereafter on the anniversary of this Agreement, the 25th ID (L), or any successor U.S. Army command, shall provide to the people of the Wai`anae Coast an annual report describing its progress in clearing UXO from MMR. At a minimum, one copy of each annual progress report will be provided promptly and free of charge to plaintiff's counsel for the use of Mālama Mākua, with an additional copy made available promptly and free of charge to the public at the Wai`anae public library.

9. Defendants shall provide Mālama Mākua and other members of the Wai`anae Coast community with technical assistance, at a cost not to exceed fifty thousand dollars ($50,000), to facilitate public participation in the NEPA process, as described below.

a. <u>Purpose:</u> The intent of this provision is to provide technical assistance to Mālama Mākua and other members of the Wai`anae Coast community to help them better understand the technical issues and study protocols to be used during the NEPA process at MMR. This assistance shall be provided by a technical assistant or assistants, who will review the technical issues and study protocols to be used during the preparation of the EIS and provide

input to Mālama Mākua, other members of the Wai`anae Coast community and defendants regarding same. The technical assistant(s) will seek to help Mālama Mākua and other members of the Wai`anae Coast community understand the issues involved during the EIS process in order to facilitate and inform public participation and comment in the scoping process and in the public comment periods for the EIS study protocols (discussed in paragraph 6a, supra) and for the draft EIS. This assistance will be limited to facilitating and informing the public's participation and comment concerning technical issues during the scoping process and public comment periods on the EIS study protocols and the draft EIS.

b. Technical Assistant(s). Within thirty (30) days following the Court's approval of this Agreement, the Parties will establish mutually agreed upon qualifications for such assistant(s). Thereafter, Mālama Mākua and other members of the Wai`anae Coast community may submit applications nominating individuals who meet those qualifications for contract, with a copy of each application promptly provided to plaintiff's counsel on behalf of Mālama Mākua. Within ten (10) working days of the date an application for technical assistance is received, the Parties shall raise any objections thereto (e.g., disagreement with the qualifications or appropriateness of a nominated individual or the compensation to be paid for the proposed scope of services). If there is no objection to an application, it shall be promptly granted. If either Party objects to an application, the Parties and the person or organization that submitted the application ("Applicant") will promptly meet and confer in a good faith attempt to resolve any objections (e.g., reach agreement on the person nominated, find a suitable and mutually acceptable replacement, or modify the compensation to be paid). Final action on any application will be taken within fifteen (15) days of receipt, unless the Applicant and the Parties agree to a

longer period of time. No application for technical assistance will be granted if, following the informal resolution process described in this paragraph, any Party still objects.

10. The Parties agree that plaintiff is entitled to an award of reasonable attorneys' fees and costs incurred in this litigation and will attempt to reach agreement as to the amount of such award. If the Parties are unable to do so, plaintiff may file an application with this Court for the recovery of fees and costs no later than November 16, 2001.

11. Defendants shall transport explosives, grenades, mines, artillery rounds, anti-tank rounds, and mortar rounds to MMR by airlift, provided such airlift is available and weather permits. When airlift is unavailable or weather does not permit, defendants agree that any transport of such munitions and ordnance by way of Farrington Highway will avoid the hours from 5:00 a.m. to 7:00 p.m. Further, defendants agree that transport of all other munitions and ordnance by way of Farrington Highway will avoid peak traffic hours and times when children are traveling to or from school (i.e., from 5:30 a.m. to 8:30 a.m. and from 12:30 p.m. to 6:30 p.m.).

12. At least one member of Mālama Mākua will be allowed access as an observer to each live-fire training exercise at MMR, post-training UXO cleanup, and post-training evaluation of damage to cultural sites. Defendants shall provide written notice to plaintiff's counsel, Earthjustice Legal Defense Fund, at least five (5) working days prior to each live-fire training exercise at MMR. The extent and terms of the access, including the maximum number of observers allowed, will be determined by defendants, in consultation with Mālama Mākua, based on requirements for training, safety, national security and compliance with applicable laws and regulations. Other members of the Wai`anae Coast community seeking access as observers shall

make their requests to the 25th ID (L), as established by protocols to be developed by defendants within thirty (30) days following the Court's approval of this Agreement

13. Members of the Wai`anae Coast community, including Mālama Mākua, will be allowed daytime access (sunrise to sunset) to MMR to conduct cultural activities at least twice a month. Additionally, members of the Wai`anae Coast community, including Mālama Mākua, will be allowed overnight access (from two hours before sunset on the first day until two hours after sunset on the second day) to MMR to conduct cultural activities on at least two additional occasions per year. During the first year following the Court's approval of this Agreement, Mālama Mākua will be allowed overnight access on at least one additional occasion -- from December 14 through December 15, 2001 -- for observance of the Makahiki. Access to the Ukanipō Heiau is subject to the Ukanipō Heiau Advisory Council per the Programmatic Agreement signed by the 25th ID (L) on October 12, 2000. The cultural access provided for in this paragraph will be subject to limitations determined by defendants in consultation with native Hawaiian cultural practitioners, including those from Mālama Mākua, based on requirements for training, safety, national security, and compliance with applicable laws and regulations. The Parties will establish protocols for this access promptly, with the first daytime access taking place no later than sixty (60) days following the Court's approval of this Agreement and the first overnight access taking place no later than the December 14-15, 2001 Makahiki observance described above.

## FUNDING

14. Nothing in this Agreement relieves defendants of the obligation to act in a manner consistent with applicable federal, state or local law, and applicable appropriations law. No provision of this Agreement shall be interpreted as or constitute a commitment or requirement

that defendants obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other applicable law or regulation.

ENFORCEMENT OF THIS AGREEMENT

15. a. This Court has jurisdiction to enforce the terms of this Agreement. See Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375 (1994).

b. This Agreement may be modified by the Court upon good cause shown by written stipulation between the Parties filed with and approved by the Court, or upon written motion filed by either Party and granted by the Court. In the event that either Party seeks to modify the terms of this Agreement, including any of the deadlines for any action set forth herein, or in the event of a dispute arising out of or relating to this Agreement, or in the event that either Party believes that the other Party has failed to comply with any term or condition of this Agreement, the Party seeking the modification, raising the dispute or seeking enforcement, shall provide the other Party with written notice of the claim. The Parties agree that they will meet and confer (in-person not required) at the earliest possible time in a good faith effort to resolve the claim before bringing any matter to the Court. If the Parties are unable to resolve the claim within ten (10) days after the notice, either Party may bring the claim to the Court. The requirement to wait ten (10) days before bringing a claim to the Court shall not prohibit plaintiff from immediately seeking a temporary restraining order if plaintiff alleges that defendants have violated the limitations on training set forth in paragraph(s) 2 or 3.

USE OF AGREEMENT

16. a. This Agreement was negotiated and executed by the Parties in good faith to avoid expensive and protracted litigation and is a settlement of claims and defenses which were vigorously contested, denied and disputed. This Agreement shall not constitute an admission or

adjudication with respect to any allegation made by any Party. Moreover, this Agreement shall not constitute an admission of any wrongdoing, misconduct or liability on the part of the defendants. Further, this Agreement shall not constitute an acknowledgment by plaintiff that there was no wrongdoing, misconduct or liability.

b. Plaintiff reserves its right to bring subsequent actions challenging the adequacy of the EIS that defendants will prepare pursuant to this Agreement. This Agreement shall not constitute an admission by plaintiff that defendants' compliance with the Agreement satisfies their obligations under NEPA.

DISMISSAL OF THIS ACTION & DISSOLUTION OF PRELIMINARY INJUNCTION

17. a. This case shall be dismissed with prejudice, except for plaintiff's claim for an award of attorneys' fees and costs, which is left for resolution through future negotiation or motion practice. Judgment shall not be entered in this case prior to entry of an order resolving plaintiff's claim for an award of attorneys' fees and costs.

b. The preliminary injunction entered by the Court on July 16, 2001 is hereby dissolved.

AUTHORIZATION TO SIGN

18. This Agreement shall apply to and be binding upon the Parties, their members, delegates and assigns. The undersigned representatives certify that they are authorized by the Party or Parties they represent to enter into the Agreement and to execute and legally bind that Party or Parties to the terms and conditions of this Agreement.

\\

\\

\\

Executed this 4th day of October, 2001.

ELLIOT ENOKI, United States Attorney
THEODORE G . MEEKER, Assistant United States Attorney
District of Hawai`i
Room 6-100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawai`i 96850

By: ______________________
Theodore G. Meeker

JOHN C. CRUDEN, Assistant Attorney General
STEPHEN G. BARTELL, Trial Attorney
General Litigation Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663

By: ______________________
Stephen G. Bartell
Attorneys for Defendants

EARTHJUSTICE LEGAL DEFENSE FUND
PAUL H. ACHITOFF
DAVID L. HENKIN
D. KAPUA`ALA SPROAT
223 South King Street, Suite 400
Honolulu, Hawai`i 96813

By: ______________________
David L. Henkin
Attorneys for Plaintiff