IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MĀLAMA MĀKUA, a Hawai`i non-profit corporation,<br><br>          Plaintiff,<br><br>     vs.<br><br>ROBERT GATES, Secretary of Defense; and JOHN McHUGH, Secretary of the United States Department of the Army,<br><br>          Defendants.<br>_____ | CIVIL NO. 09-00369 SOM/LEK<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS |

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS

I.     INTRODUCTION.

          This case is an offshoot of a complaint originally filed in Civil Number 00-00813 SOM on December 20, 2000.  The major issue in that complaint was whether Defendants had to prepare an environmental impact statement ("EIS") addressing the effects of military training with live ammunition at the Makua Military Reservation ("MMR") in West Oahu, Hawaii.

          On October 4, 2001, the parties entered into a Settlement Agreement and Stipulated Order, dismissing an amended complaint with prejudice.  The Complaint in the present case alleges that, as part of the extensive 2001 settlement agreement, the Army agreed to "diligently pursue completion of an EIS" for proposed military training.  See Complaint for Declaratory Judgment and Injunctive Relief ¶ 19 (Aug. 12, 2009).  In

connection with completing the EIS, the Army agreed to fill in gaps in existing knowledge by conducting various studies.  Id. ¶ 21.  These studies pertained to potential contamination of soil, air quality, and surface and ground water.  Mālama Mākua alleges that the Army was required to evaluate the potential for contamination beyond the boundaries of MMR.  Id. ¶ 22.

Mālama Mākua says that, if the initial contamination studies revealed a likelihood that pollutants were being transported beyond MMR, the Army was supposed to conduct additional studies, testing for contamination of "fish, limu [a type of seaweed] and other marine resources on which area residents rely for subsistence."  Id. ¶ 23.

According to Mālama Mākua, the 2001 settlement also required the Army to conduct and complete "subsurface archaeological surveys of all areas within the CCAAC [Company Combined Arms Assault Course] training area circumscribed by the south firebreak road," except for areas suspected of containing Improved Conventional Munitions ("ICMs").  Id. ¶¶ 11, 25.

This is not Mālama Mākua's first attempt to enforce the 2001 settlement agreement.  Id. ¶ 27.  Mālama Mākua says that, as part of a 2007 settlement of a 2006 dispute relating to the earlier settlement, the Army again agreed to conduct "subsurface archaeological surveys of all areas within the CCAAC circumscribed by the south firebreak road," except for areas

suspected of containing ICMs.  Id. ¶ 29.  Mālama Mākua alleges

that the 2007 settlement reaffirmed the Army's obligation to

conduct "one or more studies to determine whether fish, limu,

shellfish, and other marine resources near Mākua Beach and in the

muliwai [brackish water pools near mouths of streams] on which

area residents rely for subsistence are contaminated by

substances associated with the proposed training activities at

MMR."  Id. ¶ 31.  Mālama Mākua says that the Army also agreed to

test marine resources for over forty chemicals.

Mālama Mākua alleges that, as part of the 2007

settlement, the Army agreed to seek public review of and comment

on its archaeological surveys and contamination studies.  Id.

¶ 6.

In early 2007, the Army sought public review of and

comment on its "Archaeological Subsurface Survey Within the

Company Combined Arms Assault Course (CCAAC) Circumscribed by the

South Firebreak Road."  Id. ¶ 37.  Mālama Mākua complains that

this survey omitted certain areas and did not include proper

samples of areas it did test.  Id. ¶¶ 38-40.

Also in early 2007, the Army sought public review and

comment on a marine resources study of fish and limu.  Mālama

Mākua alleges that, in January 2009, the Army amended that study

to include shellfish.  Id. ¶¶ 42-43.  Mālama Mākua says these

studies violated the 2007 settlement requiring testing of fish,

limu, shellfish, and other marine resources. Id. ¶ 44. Mālama Mākua alleges that the studies failed to satisfy settlement obligations in many ways, including focusing on the wrong type of limu. Id. ¶¶ 45-46.

Mālama Mākua alleges that the Army issued its EIS in June 2009 without having completed proper archaeological surveys and contamination studies. Id. ¶ 51.

On August 12, 2009, Mālama Mākua filed the present Complaint, asserting (1) that the Army failed to properly complete archaeological surveys, thereby violating paragraph 6(c) of the 2001 settlement agreement and paragraph 1 of the 2007 settlement agreement (First Claim for Relief); (2) that the Army failed to properly complete marine resources contamination studies as required by paragraph 6(a) of the 2001 settlement agreement and paragraph 6 of the 2007 settlement agreement (Second Claim for Relief); (3) that the Army failed to properly seek public input on the archaeological surveys and marine resources contamination studies in violation of paragraphs 11 and 12 of the 2007 settlement agreement (Third Claim for Relief); and (4) that the Army failed to incorporate the archaeological surveys and marine resources contamination studies into the final EIS (Fourth Claim for Relief).

On October 5, 2009, the Army moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure, arguing that it had met all of its obligations under the 2001 and 2007 settlement agreements and that Mālama Mākua failed to state a viable claim.  The motion to dismiss is denied with respect to the First and Second Claims for Relief but granted with respect to the Third and Fourth Claims for Relief.

II.      STANDARD.

Rule 12(b) of the Federal Rules of Civil Procedure reads: "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.  But a party may assert the following defenses by motion: . . . (6) failure to state a claim upon which relief can be granted."

Under Rule 12(b)(6), review is generally limited to the contents of a complaint.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988, as amended by 275 F.3d 1187 (9th Cir. 2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996).  If matters outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for summary judgment.  See Keams v. Tempe Tech. Inst., Inc., 110 F.3d 44, 46 (9th Cir. 1997); Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996).  However, courts may "consider certain materials--documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice--without converting the motion to dismiss into a motion for summary judgment."  United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).  Documents whose

contents are alleged in a complaint and whose authenticity are not questioned by any party may also be considered on a Rule 12(b)(6) motion.  See Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994), overruled on other grounds as stated in Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125 (9th Cir. 2002).

On a Rule 12(b)(6) motion, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996).  However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss.  Sprewell, 266 F.3d at 988; Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996).  Additionally, the court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint.  Sprewell, 266 F.3d at 988.

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory.  Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988) (citing Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984)).  A motion to dismiss may also be granted if an affirmative defense or other bar to relief is apparent from the

face of the complaint, such as a statute of limitation.  Imbler
v. Pachtman, 424 U.S. 409 (1976).

III.     ANALYSIS.

        The Army argues for dismissal of the Complaint pursuant
to Rule 12(b)(6), contending that, because the Army fully
complied with the terms of the 2001 and 2007 settlement
agreements, Mālama Mākua's Complaint fails to state a viable
claim.  But whether the Army complied with its obligations under
the settlement agreements, the heart of Mālama Mākua's Complaint,
is a matter more properly decided under the summary judgment
framework than under a Rule 12(b)(6) motion to dismiss.  This
court therefore denies the motion to dismiss the First and Second
Claims for Relief.  The court dismisses the other claims, which,
though purporting to state settlement agreement breaches, contain
no factual allegations supporting any settlement breach.

        Mālama Mākua's response includes a challenge to the
Army's motion to dismiss as improper.  As Mālama Mākua notes,
after repeatedly considering matters as part of the original
lawsuit, this court asked Mālama Mākua to file a new action
whenever it sought enforcement of the settlement agreements.  The
purpose of asking for new actions was to provide the parties with
some procedural framework for litigating new disputes.  This
court did not intend to give either party a procedural advantage
that would not have existed had Mālama Mākua simply moved in the

7

original action to enforce the settlement agreements.  However, this court does not view the Army's motion as giving it a procedural advantage.  To the contrary, this court views the Army's motion as part of the orderly litigation process. Similarly, a new action provides for discovery by the parties, while a motion to enforce the settlement agreements might not so clearly give rise to discovery rights.  This court finds no procedural impropriety in the Army's testing of the viability of Mālama Mākua's claims through a motion to dismiss.

The court is not persuaded by the Army's argument that Mālama Mākua's only remedy is to challenge the sufficiency of the EIS, rather than to bring an action to enforce settlement agreements.  In paragraph 17 of the 2007 settlement agreement, the parties agreed that Mālama Mākua "reserve[d] its right to bring subsequent actions challenging [the Army's] compliance with [its] legal obligations, including, but not limited to, challenges to the adequacy of the archaeological surveys . . . and marine resource studies."  To hold otherwise would essentially render the settlement agreements meaningless.

A.   The First Claim for Relief.

In the First Claim for Relief, Mālama Mākua asserts that the Army has violated paragraph 6(c) of the 2001 settlement agreement and paragraph 1 of the 2007 settlement agreement by failing to properly complete subsurface archaeological surveys.

The Army responds that Mālama Mākua states no claim because the Army has, in fact, satisfied its obligations with respect to subsurface archaeological surveys.  Because Mālama Mākua's Complaint alleges a viable claim, this court denies the Army's motion to the extent it seeks dismissal of the First Claim for Relief, leaving for further adjudication whether the Army has, in fact satisfied its obligations.  <u>Zamani v Carnes</u>, 491 F.3d 990, 996 (9th Cir. 2007) ("The relevant inquiry for a Rule 12(b)(6) motion is not whether the plaintiff has demonstrated a likelihood of success on the merits.  A Rule 12(b)(6) dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." (citation and quotation omitted)).

     1.   <u>Sufficiency of Archaeological Survey Claim.</u>

Paragraph 1 of the 2007 settlement agreement required the Army to

> complete surface and subsurface
> archaeological surveys of all areas within
> the Company Combined-Arms Assault Course
> circumscribed by the south firebreak road,
> except that the area within the firebreak
> road identified as containing improved
> conventional munitions ("ICMs") on the map
> attached hereto as Exhibit "1" shall be
> surveyed only if the Headquarters, Department
> of the Army ("HQDA"), grants the appropriate
> waiver . . . .  No subsurface archaeological
> surveys will be conducted under conditions
> that an Army Explosive Ordinance ("EOD")
> Safety Officer determines are too dangerous.
> Should safety concerns arise, the parties
> will meet and confer in a good faith attempt

> to resolve the concerns, and the EOD Safety
> Officer will provide an explanation for his
> or her ultimate determination.  The EOD
> Safety Officer will be the final arbiter on
> all matters of safety.

Mālama Mākua alleges that, in doing the 2007 archaeological survey, the Army breached this provision by failing "to carry out any subsurface surveys whatsoever in several areas within the south firebreak road and outside of the ICM area, including one bordering the ICM area on the south and southwest and another to the south of sites 4543 and 4542."  Complaint ¶ 38.

The Army's position is that the plain, unambiguous language of the 2007 settlement agreement contained no requirement that the Army survey every inch of any area. Additionally, the Army argues that, because it had already completed surface (not subsurface) surveys of the CCAAC area before signing the 2007 agreement, it did not have to perform any more surveys.

Citing McKnight v. Torres, 563 F.3d 890 (9th Cir. 2009), and United States v. Basin Elec. Power Coop., 248 F.3d 781 (8th Cir. 2001), the Army advanced the position at the hearing on the present motion that, because it had done a survey and because it had the sole authority to determine how to conduct that survey, the First Claim for Relief had no factual foundation. The Army argued that its "good faith" in complying with the settlement agreement's survey requirement was irrelevant because

it had satisfied the plain language of the agreement.  This court is not persuaded.

The Army has not demonstrated that the settlement agreement provided it with the sole right to determine what was meant by a "survey."  While the agreement did not specifically define what was meant by the term "survey," it did not by its silence give the Army such freedom to do whatever it wanted that its "good faith" became irrelevant.  Requiring the Army to do a good-faith survey creates no obligation not contemplated by the settlement agreement, but instead ensures that Mālama Mākua receives the benefit of its bargain--a survey.  McKnight, 563 F.3d 890, and Basin Electric, 248 F.3d 781, involve contractual language that is not analogous.

Taken to its logical conclusion, the Army's argument would allow the army to satisfy its burden by poking a stick into the ground and calling that action a "survey."  This court is not persuaded that the plain language of the settlement agreement contemplated such a "survey."

To rule otherwise could lead to ludicrous results.  For example, under the Army's argument, if A agreed to pay B $30,000 for B to build a car, B could give A the body of a car with wheels but no engine, and then say that it satisfied its burden of building a "car" because B considered that to be a "car."  The parties in the present case appear to be disputing whether the

11

Army's "survey" is like a "car" with no engine or is in compliance with the Army's survey obligations.  Put another way, the parties appear to be disputing whether the Army's survey was a good-faith attempt to satisfy its obligations under the 2007 settlement agreement.  This is not a matter amenable to dismissal under Rule 12(b)(6).  See Zamani, 491 F.3d at 996 (noting that, when adjudicating a Rule 12(b)(6) motion, this court does not examine a plaintiff's likelihood of succeeding on the merits of a claim, but rather examines only whether a cognizable claim is alleged).  Accordingly, to the extent the Army seeks dismissal of Mālama Mākua's archaeological survey claim, the motion is denied.

2.   Adequacy of Survey Design Claim.

In paragraph 39 of the Complaint, Mālama Mākua asserts that the archaeological survey's design was flawed.  Mālama Mākua alleges that the Army's sampling methodology was inadequate to determine what subsurface features existed and fails to satisfy the Army's obligations.

The Army seeks dismissal of this part of the First Claim for Relief on the grounds that its survey collected data from a representative group of random areas (rather than from every inch of the area, which would have taken decades), and that it was within its rights in refraining from conducting subsurface surveys in areas in which surface surveys had been done with a finding of no surface features.  The Army says that, in its

experience, there is a strong correlation between a lack of surface features and a lack of subsurface features.  Again, whether the Army's conduct satisfied its obligations under the settlement agreement goes to the heart of Mālama Mākua's claim. Mālama Mākua alleges a viable claim; the court will not adjudicate the substance of that claim on the Army's present motion.

3.   <u>Failure to Carry Out Sampling Claim.</u>

In paragraph 40 of the Complaint, Mālama Mākua asserts that the archaeological survey's design required the Army to sample 350 excavations.  Mālama Mākua contends that the Army failed to carry out 73 of the planned excavations, and that the survey therefore does not satisfy the Army's obligations.

The Army seeks dismissal of this part of the First Claim for Relief, arguing that the settlement agreement(s) do not require any particular number of excavations.  The Army contends that, although it rejected 73 "shovel digs," it actually used 477 shovel digs, more than the originally planned 350 excavations.

The Army's argument is one better suited for a summary judgment motion, not a motion to dismiss.  Under Rule 12(b)(6), this court merely examines whether the Complaint's allegations are sufficient to state a viable claim.  Mālama Mākua's Complaint states a claim in asserting that the Army's alleged failure to

carry out its own sampling plan violated one or more of the settlement agreements.

      B.   <u>Second Claim for Relief.</u>

      In the Complaint's Second Claim for Relief, Mālama Mākua asserts that the Army failed to comply with paragraph 6(a) of the 2001 settlement agreement and paragraph 6 of the 2007 settlement agreement, which Mālama Mākua says required the Army to complete

> "studies to determine whether fish, limu, shellfish, and other marine resources near Mākua Beach and in the muliwai on which area residents rely for subsistence are contaminated by substances associated with the proposed training activities at MMR" and to evaluate "the potential that activities at MMR have contributed or will contribute to any such contamination and whether the proposed training activities at MMR pose a human health risk to area residents [who] rely on marine resources for subsistence."

Complaint ¶ 56.

      Mālama Mākua concedes that the Army did conduct a marine resources survey. <u>See</u> Complaint ¶ 42 ("On or about February 2, 2007, defendants put out for public review a marine resources study"). But Mālama Mākua complains that this survey was limited to "only fish and limu." Complaint ¶ 42. Mālama Mākua concedes that the Army revised this survey in January 2009 "to include a discussion of shellfish." Complaint ¶ 43. Mālama Mākua asserts that the revised survey was still insufficient because it was limited to fish, limu, and shellfish, and did not

examine "other marine resources."  Complaint ¶ 44.  Mālama Mākua says that the Army, in examining only inedible limu, also violated the settlement agreement's requirement that the Army determine whether resources relied on "for subsistence" were contaminated.  Complaint ¶ 45.  Mālama Mākua further asserts that the Army's methodology did not permit proper surveys (i.e., it did not address what kind of arsenic was detected, analyze limu from locations other than Mākua, compare species from Mākua and other locations, or gather species at different times of the day).  Complaint ¶ 46.

The Army seeks dismissal of this claim, arguing that Mālama Mākua is misrepresenting the Army's obligations under the settlement agreement.  The Army says that the actual settlement agreement requires it to

> complete studies of potential contamination
> of soil, surface water, and groundwater, and
> of potential impacts on air quality,
> associated with the proposed training
> activities at MMR.  These studies will
> evaluate whether there is the potential for
> any contamination to be transported beyond
> the boundaries of MMR that may contaminate
> the muliwai, or any marine resource or
> wildlife on or near Mākua Beach.  If studies
> reveal the likelihood that such contamination
> is occurring or has occurred, defendants
> shall undertake additional studies of these
> resources (e.g., testing of fish, limu and
> other marine resources on which area
> residents rely for subsistence; testing of
> the muliwai for contamination).

2001 Settlement Agreement ¶ 6(a).

To the extent Mālama Mākua asserts that the Army's survey was inadequate, Mālama Mākua states a viable claim. Although paragraph 6(a) of the 2001 settlement agreement does not expressly require testing of "other marine resources," as those words were used to provide an example, the settlement agreement did require the Army to "undertake additional studies" of marine resources if studies revealed a likelihood that contamination had occurred or was occurring.  Moreover, paragraph 6 of the 2007 settlement agreement required the Army to "complete one or more studies to determine whether fish, limu, shellfish, and other marine resources near Mākua Beach and in the muliwai on which area residents rely for subsistence are contaminated by substances associated with the proposed training activities at MMR" and to test the marine resources for over forty different chemicals.  Whether the Army's survey satisfied these obligations is not properly the subject of a Rule 12(b)(6) motion.  See Zamani, 491 F.3d at 996.

At the hearing on this motion, the Army argued that it was entitled to summary judgment because the settlement agreement only required it to do a study, which it did.  The Army contended that what kind of study it did was in its sole discretion.  At the hearing, the Army went so far as to argue that it could have satisfied the "study" requirement by simply having a luau, serving food from the area, and seeing whether anyone got sick.

16

As discussed above with respect to the First Claim for Relief, the Army's contention is based on an assumption that is not factually supported for purposes of this motion to dismiss.  The Army points to nothing in any agreement giving it the sole discretion to interpret what constitutes any "study" required by any agreement.  Paragraph 6 of the 2007 settlement agreement requires the Army to "evaluate" whether its activities have or will contribute to contamination and whether the proposed activities will pose a human health risk to area residents.  The use of "evaluate" in the agreement suggests the parties' intended to have "studies" that were meaningful.  The court is not, of course, opining here on whether the studies were or were not meaningful; the court is only ruling that the record does not support a dismissal based on the Army's unfettered discretion to present any action it took as a "study" satisfying its contractual obligations.

The Army also challenges the viability of allegations that it breached its marine survey obligations by testing only inedible limu (rather than edible limu).  The Army contends that the language of the settlement agreements does not require the testing of edible limu.  But what the Army tested may go to whether the Army complied with its obligation to complete "studies to determine" whether limu and other marine resources

relied on for subsistence were contaminated and to "evaluate" potential contamination risks.

Similarly, this court is not persuaded by the Army's overall argument that, as the settlement agreements required no particular methodology, any methodology sufficed.  This argument goes directly to the issue of whether the Army's survey complied with its obligations under the settlement agreements.  That is not the proper subject of a Rule 12(b)(6) motion.

C.   <u>Third Claim for Relief.</u>

In the Complaint's Third Claim for Relief, Mālama Mākua asserts that the Army failed to seek public input regarding the archaeological and marine surveys, as required by paragraphs 11 and 12 of the 2007 settlement agreement.  Paragraph 11 required the Army to put the archaeological surveys and the marine resource studies it conducted pursuant to the 2007 settlement agreement out for public review and comment.  Paragraph 12 required the Army to hold at least one public meeting to receive such comments.

On page 33 of Mālama Mākua's opposition to the Army's motion to dismiss, Mālama Mākua clarifies the Third Claim for Relief.  Mālama Mākua says that, because the Army's archaeological and marine surveys were inadequate, the Army could not have possibly complied with its public notice and comment obligations.

Given Mālama Mākua's clarification, this court agrees with the Army that the Third Claim for Relief fails to state a claim upon which relief can be granted.  Paragraph 11 merely required the Army to put out the surveys it had actually "conducted" for "public review and comment."  As there is no dispute that the Army did put out its surveys for public review and comment, the Third Claim for Relief fails to allege a viable claim.  The Army cannot be said to have breached an obligation to permit review and comment on its surveys by conducting allegedly flawed surveys.  One of the purposes of public review and comment is to give the public input as to the adequacy of a study.  Unlike with the First and Second Claims for Relief, dismissal of the Third Claim for Relief is proper under Rule 12(b)(6).

This court is not examining whether Mālama Mākua is likely to succeed on the Third Claim for Relief, but instead whether the facts alleged are sufficient to state a viable claim.  See Zamani, 491 F.3d at 996.  The court notes, however, that, if this court or a jury determines that the surveys and/or studies the Army conducted were inadequate and the Army then conducts new surveys and/or studies, the Army's public review and comment obligations under paragraph 11 and 12 of the 2007 settlement agreement would be retriggered.  That is, any new, amended, or revised survey or study done pursuant to the settlement agreements would have to be put out for public review and

19

comment.  However, Mālama Mākua does not allege a viable claim that the Army has already breached paragraphs 11 and 12 by failing to put out for public comment and review surveys and/or studies that the Army has not conducted.

      D.   The Fourth Claim for Relief.

      Paragraph 13 of the 2007 settlement agreement required the Army to "incorporate in the final EIS an analysis of the results of the archaeological surveys conducted pursuant to paragraph 1 and the marine resource studies conducted pursuant to paragraph 6.  [The Army] shall assess, consider and respond to all public comments on such studies and surveys pursuant to 40 C.F.R. § 1503.4."

      Page 33 of Mālama Mākua's opposition clarifies its Fourth Claim for Relief.  Mālama Mākua premises the alleged failure to incorporate the surveys into the EIS on its claim that the surveys that were done were flawed.  Mālama Mākua is not asserting that the Army failed to incorporate its actual surveys and/or studies into the EIS.

      As with the Third Claim for Relief, the Fourth Claim for Relief fails to state a claim upon which relief can be granted, as there is no dispute that the Army incorporated the surveys and/or studies into the EIS, even assuming the surveys were flawed.  As it cannot be said that the Army failed to comply with its paragraph 13 obligations, dismissal of the Fourth Claim

for Relief is proper under Rule 12(b)(6).  <u>See</u> <u>Zamani</u>, 491 F.3d at 996.  However, as with the Third Claim for Relief, if this court or a jury determines that the Army's surveys and/or studies were inadequate, and if the Army prepares new surveys and/or studies, the Army's obligations under paragraph 13 will apply to any new, amended, or revised surveys and/or studies done pursuant to the settlement agreements.

IV.        <u>CONCLUSION.</u>

     For the reasons set forth above, this court grants the Army's motion to dismiss in part and denies it in part.  This court dismisses the Third and Fourth Claims for Relief, but leaves for further adjudication the First and Second Claims for Relief.

     IT IS SO ORDERED.

     DATED: Honolulu, Hawaii, November 18, 2009.



      /s/ Susan Oki Mollway
     Susan Oki Mollway
     United States District Judge


<u>Mālama Mākua v. Gates, et al.</u>; Civil No. 09-00369 SOM/LEK; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS