IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MALAMA MAKUA, a Hawai'i non-<br>profit corporation,<br><br>        Plaintiff,<br><br>   vs.<br><br>LEON E. PANETTA, Secretary of<br>Defense; and JOHN McHUGH,<br>Secretary of the United States<br>Department of the Army,<br><br>        Defendants. | CIVIL NO. 09-00369 SOM-RLP<br><br>FINDINGS AND RECOMMENDATION<br>REGARDING REMEDY FOR<br>DEFENDANTS' SETTLEMENT<br>VIOLATIONS; PROPOSED ORDER<br>REGARDING REMEDY FOR<br>DEFENDANTS' SETTLEMENT<br>VIOLATIONS (EXHIBIT 1) |

FINDINGS AND RECOMMENDATION REGARDING REMEDY FOR DEFENDANTS'
SETTLEMENT VIOLATIONS[1]

Before the Court, pursuant to a designation by Chief

United States District Judge Susan Oki Mollway, is the issue of

the proper remedy for Defendants Leon E. Panetta and John

McHugh's (collectively "Defendants" or "the Army") settlement

violations. In compliance with a court-ordered briefing

schedule, Plaintiff Malama Makua ("Plaintiff" or "Malama Makua")

and Defendants filed proposed orders and memoranda setting forth

their respective positions regarding the proper remedy for

---

[1] Within fourteen (14) days after a party is served with a
copy of the Findings and Recommendation, that party may, pursuant
to 28 U.S.C. § 636(b)(1)(B), file written objections in the
United States District Court. A party must file any objections
within the fourteen-day period allowed if that party wants to
have appellate review of the Findings and Recommendation. If no
objections are filed, no appellate review will be allowed.

Defendants' settlement violations on January 5, 2012.  See ECF

Nos. 213, 214.  The parties filed responses to the opposing

proposed remedies on January 26, 2012.  See ECF Nos. 215, 216.

This matter came on for hearing before the Court on

February 27, 2012 at 2:00 p.m.  David L. Henkin, Esq. and

Caroline Ishida, Esq. appeared on behalf of Plaintiff, and James

J. Dubois, Esq., Robert Lewis, Esq., and Edric Ching, Esq.

appeared on behalf of Defendants.  Based on the following, and

after careful consideration of the proposed orders, the

supporting and opposing memoranda, declarations, and exhibits

attached thereto, the arguments of counsel, and the record

established in this action, the Court HEREBY FINDS AND RECOMMENDS

that the Proposed Order Regarding Remedy for Defendants'

Settlement Violations, attached to the Findings and

Recommendation as Exhibit 1 ("Court's Proposed Order"), be

adopted as an Order of this Court.

<u>BACKGROUND</u>

On August 12, 2009, Malama Makua filed its Complaint

against Defendants (ECF No. 1), alleging violations of the

Settlement Agreement and Stipulated Order, dated October 4, 2001

("2001 Settlement Agreement," ECF No. 214-2), and the Joint

Stipulation Re: Partial Settlement of Plaintiff's Motion to

Enforce the October 4, 2001 Settlement Agreement and Stipulated

Order, dated January 8, 2007 ("2007 Settlement Agreement," ECF

No. 214-4).  Malama Makua claimed that (1) the Army failed to

properly complete archaeological surveys, thereby violating paragraph 6(c) of the 2001 Settlement Agreement and paragraph 1 of the 2007 Settlement Agreement (First Claim for Relief); (2) the Army failed to properly complete marine resources contamination studies as required by paragraph 6(a) of the 2001 Settlement Agreement and paragraph 6 of the 2007 Settlement Agreement (Second Claim for Relief); (3) the Army failed to properly seek public input on the archaeological studies in violation of paragraphs 11 and 12 of the 2007 Settlement Agreement (Third Claim for Relief); and (4) the Army failed to incorporate the archaeological studies and marine resources contamination studies into the final environmental impact statement ("EIS") (Fourth Claim for Relief).

On November 18, 2009, the Court issued an Order Granting in Part and Denying in Part Defendants' Motion to Dismiss ("Dismissal Order," ECF No. 23), which dismissed Malama Makua's third and fourth claims for relief.

On October 27, 2010, the Court issued an Order Granting in Part and Denying in Part Cross-Motions for Summary Judgment ("Summary Judgment Order," ECF No. 96). As to Malama Makua's first claim for relief, the Court held that, to the extent the Army failed to conduct any subsurface survey of Areas A to F, the Army violated its agreement to survey "all areas" of the Company Combined-Arms Assault Course ("CCAAC"). However, to the extent Malama Makua sought a better subsurface survey for

3

Areas 1 to 3, summary judgment was granted in favor of the Army, as the Army's survey of those areas was sufficiently meaningful to satisfy its obligations. With respect to Malama Makua's second claim for relief, the Court granted summary judgment to the Army as to claims arising out of the 2001 Settlement Agreement and to Malama Makua's claim that the general procedures the Army used in the marine resource survey were deficient. However, summary judgment was granted to Malama Makua as to its claim that the Army breached its obligations by not testing background contamination of limu and not determining whether the arsenic detected was harmful to human health.

From June 21 to 23, 2011, the Court held a nonjury trial on the issues that remained after summary judgment. On September 30, 2011, the Court issued its Findings of Fact; Conclusions of Law; Order Determining that the Army Breached the 2007 Settlement Agreement in Two Ways, But Not in Other Ways ("FOFCOL," ECF No. 206). The Court concluded that the Army breached the 2007 Settlement Agreement by failing to test limu and other marine resources that are eaten by residents of the Waianae Coast to evaluate whether they posed a human health risk. In all other respects, the Court concluded that the Army did not breach the agreement.

LEGAL STANDARD

Federal courts apply state contract law principles to the construction and enforcement of settlement agreements, even

4

if the underlying cause of action is federal. O'Neil v. Bunge Corp., 365 F.3d 820, 822 (9th Cir. 2004) ("construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally"). See also Matter of Haw. Corp., 796 F.2d 1139, 1143 (9th Cir. 1986) (applying Hawaii law to interpret settlement agreement); Exotics Hawaii-Kona, Inc. v. E.I. Du Pont De Nemours & Co., 116 Hawai'i 277, 288, 172 P.3d 1021, 1032 (2007) (stating that settlement agreements are simply a species of contract and are thus governed by principles of contract law).

Under Hawaii law, "contractual terms should interpreted according to their plain, ordinary meaning and accepted use in common speech." State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc., 90 Hawai'i 315, 324, 978 P.2d 753, 762 (1999) (citing Amfac, Inc. v. Waikiki Beachcomber Inv. Corp., 74 Haw. 85, 108, 839 P.2d 10, 24 (1992)). When the contract is definite and unambiguous, it is well settled that courts should not draw inferences from a contract regarding the parties' intent. Id. (citing Hanagami v. China Airlines, Ltd., 67 Haw. 357, 364, 688 P.2d 1139, 1144 (1984)). The court should look no further than the four corners of the contract to determine whether an ambiguity exists. Id. (citing KL Grp. v. Case, Kay & Lynch, 829 F.2d 909, 916 (9th Cir. 1987)). As a result, the parties' disagreement as to the meaning of a contract or its terms does not render clear language ambiguous. Id.

The district court's power to enforce settlement agreements includes the authority to award damages for failure to comply with these agreements. TNT Mktg., Inc. v. Agresti, 796 F.2d 276, 278 (9th Cir. 1986). A breach or violation of a settlement agreement entitles the non-breaching party to specific performance or an award of unliquidated damages, as appropriate. Id. See also Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 378 (1994) (holding that district courts have ancillary jurisdiction to enforce a settlement from a previous litigation "through award of damages or a decree of specific performance"); Warner v. Denis, 84 Hawai'i 338, 347, 933 P.2d 1372, 1381 (App. 1997) ("It is a basic principle of contract law that the promisor is ordinarily bound to perform his [or her] agreement according to its terms or, if he [or she] unjustifiably fails to perform, to respond in damages for his [or her] breach of the contract.") (quotations and citation omitted).

ANALYSIS

The parties' proposed orders regarding the proper remedy for Defendants' settlement violations identify seven areas of concern, which the Court will address in turn.

A.    Completion of Subsurface Archaeological Surveys

The parties agree that the Army must complete subsurface archaeological surveys of Areas A through F as identified in Exhibit 1 to Dr. Laurie Lucking's April 7, 2010 deposition, attached to the parties' proposed orders as Appendix

6

A, in accordance with the terms and conditions set forth in
paragraph 6(c) of the 2001 Settlement Agreement and paragraphs 1,
5, and 9 of the 2007 Settlement Agreement. See Pl.'s Proposed
Order, ECF No. 214-9, ¶ 2(a); Defs.' Proposed Order, ECF No. 213,
¶ I.1. Therefore, the Court finds that this remedy is
appropriate and recommends that paragraph 1 of the Court's
Proposed Order be adopted.

**B.    Completion of Marine Resources Studies**

Paragraph 6 of the 2007 Settlement Agreement, in
relevant part, required Defendants to

> complete one or more studies to determine
> whether . . . limu . . . and other marine
> resources near Makua Beach and in the muliwai
> on which area residents rely on for
> subsistence are contaminated by substances
> associated with the proposed training
> activities at [Makua Military Reservation
> ("MMR")]. . . . [and to evaluate] the
> potential that activities at MMR have
> contributed or will contribute to any such
> contamination and whether the proposed
> training activities at MMR pose a human health
> risk to area residents that rely on marine
> resources for subsistence.

ECF No. 214-4, ¶ 6. Although the parties agree that studies of
limu and other marine resources need to be completed, they
disagree as to the scope of the studies. See ECF No. 214-9, ¶
2(b); ECF No. 213, ¶ I.2.

In its FOFCOL, the Court held that the Army failed to
satisfy its obligation to provide a meaningful study concerning
the contamination of "other marine resources" when it simply

assumed that "other marine resources" were contaminated. <u>See</u> ECF No. 206, at 23, ¶ 6. Moreover, in its Summary Judgment Order, the Court found that, in order to conduct a meaningful survey, the Army should have "determine[d] the baseline contamination for limu in general in Hawaii" and "whether the arsenic detected in the limu was of the highly toxic or inorganic form." ECF No. 96, at 19. In accordance with these rulings, the Court finds that the language contained in paragraph 2 of the Court's Proposed Order is appropriate and should be adopted.

## C. Incorporation of Results Into Final EIS

The parties agree that the Army must incorporate into Defendants' Final EIS for Military Training Activities at MMR, dated June 2009, an analysis of the results of the subsurface archaeological surveys and marine resource studies, pursuant to paragraph 13 of the 2007 Settlement Agreement. <u>See</u> ECF No. 214-9, ¶ 4; ECF No. 213, ¶ I.4. Therefore, the Court finds that this remedy is appropriate and recommends that paragraph 3 of the Court's Proposed Order be adopted.

## D. Public Review and Comment

Paragraphs 11 and 12 of the 2007 Settlement Agreement required Defendants to put out the archaeological surveys and marine resource studies for public review and comment. <u>See</u> ECF No. 214-4, ¶¶ 11-12. In its Dismissal Order, the Court also stated that "if this court or a jury determines that the surveys and/or studies the Army conducted were inadequate and the Army

8

then conducts new surveys and/or studies, the Army's public review and comment obligations under paragraph 11 and 12 of the 2007 settlement agreement would be retriggered." ECF No. 23, at 19. While the parties agree that this public review and comment obligation exists, Defendants want to limit it so that they are not required to accept "additional comments on the previously issued Final [EIS], or any supplemental EIS." ECF No. 213, ¶ I.3.

Defendants reason that "because the Army has previously accepted comments on the previously issued final EIS, it has met its contractual obligations with that regard." Defs.' Mem. Supp. Proposed Order, ECF No. 231-2, at 11. Plaintiff takes issue with Defendants' attempt to limit additional comments on any supplemental EIS, arguing that "the public must be given additional opportunity to comment" whenever a supplemental EIS is required. Pl.'s Response to Defs.' Proposed Order, ECF No. 216, at 15 (citing <u>Kootenai Tribe of Idaho v. Veneman</u>, 313 F.3d 1094, 1118 (9th Cir. 2002)[2]; 40 C.F.R. § 1502.9(c)(4); 32 C.F.R. § 651.24). The Court agrees with both positions, and as a result, the Court finds that the language contained in paragraph 4 of the Court's Proposed Order is appropriate and should be adopted.

---

[2] <u>Kootenai Tribe</u> was abrogated by <u>Wilderness Soc'y v. U.S. Forest Serv.</u>, 630 F.3d 1173 (9th Cir. 2011), on January 14, 2011.

**E.    Setting Aside Final EIS and ROD**

The primary difference between the parties' proposed remedy orders is that Plaintiff requests that Defendants' final EIS and associated Record of Decision, dated July 16, 2009 ("ROD"), be vacated and set aside.  <u>See</u> ECF No. 214-9, ¶ 1. Plaintiff contends that Defendants expressly promised in both the 2001 and 2007 Settlement Agreements that they would "complete" the mandated archaeological surveys and marine resources studies "[a]s part of the preparation of the EIS for military training activities at MMR."  Pl.'s Mem., ECF No. 214, at 16 (citing 2001 Settlement Agreement, at ¶ 6; 2007 Settlement Agreement at ¶¶ 1, 6).  Defendants, on the other hand, argue that the 2001 and 2007 Settlement Agreements merely require that an analysis of the archaeological surveys and marine resources studies be incorporated into the final EIS.  <u>See</u> Defs.' Response, ECF No. 215, at 9.

Plaintiff brought this lawsuit as an action to enforce the 2001 and 2007 settlement agreements.  <u>See</u> ECF No. 1, at ¶ 1 ("This action seeks an order compelling compliance by [Defendants] with obligations they voluntarily assumed when they entered into the [2001 and 2007 Settlement Agreements].").  Paragraph 13 of the 2007 Settlement Agreement states:

> Defendants shall incorporate into the final EIS an analysis of the results of the archaeological surveys . . . and the marine resources studies . . . Defendants shall assess, consider and respond to all public

> comments on such studies and surveys pursuant
> to 40 C.F.R. § 1503.4.

ECF No. 214-4, at ¶ 13.  The Court has found no provision in either of the settlement agreements which requires the withdrawal of the final EIS or ROD if the archaeological surveys or marine resources studies were deemed inadequate under Defendants' contractual obligations.  Rather, the plain language of the settlement agreements merely requires Defendants to incorporate an analysis of the results of these surveys and studies into the final EIS.  See id.  Indeed, in dismissing Plaintiff's Fourth Claim for Relief, the Court specifically stated that "if this court or jury determines that the Army's surveys and/or studies were inadequate, and if the Army prepares new surveys and/or studies, the Army's obligations under paragraph 13 will apply to any new, amended, or revised surveys and/or studies done pursuant to the settlement agreements."  ECF No. 23, at 21; ECF No. 214-9, at 2 (quoting same).  Notably, the Court's Dismissal Order did not contemplate setting aside the EIS or ROD; instead, the Court relied on the plain language of the settlement agreements with respect to Defendants' obligations following the preparation of new archaeological surveys and marine resources studies.

Plaintiff contends that Defendants' proposed remedy would

> contravene[] the parties' intent in entering
> into the 2001 and 2007 Settlements that,
> before defendants made a decision whether to
> resume military training at MMR they would

11

> develop and analyze specified information
> regarding potential impacts on cultural and
> subsistence resources and would also consider
> public comments - including expert input - on
> those topics.

ECF No. 216, at 3.  However, the Court finds that the terms of

the settlement agreements regarding Defendants' obligations

regarding the final EIS and ROD are definite and unambiguous and,

accordingly, will not draw inferences from the agreements

regarding the parties' intent.  See State Farm, 90 Hawaiʻi at

324, 978 P.2d at 762.

In addition, because Plaintiff brought this action

under contract, Plaintiff's reliance on cases brought pursuant to

the National Environmental Policy Act, 42 U.S.C. § 4321 et seq.

("NEPA"), is misplaced.[3]  Unlike the plain language standard for

the interpretation and enforcement of contracts, an agency's

decision under NEPA may only be set aside if it is "arbitrary,

capricious, an abuse of discretion, or otherwise not in

accordance with law."  Westlands Water Dist. v. U.S. Dep't of

Interior, 376 F.3d 853, 865 (9th Cir. 2004) (quoting 5 U.S.C. §

706(2)(A)).  Here, Plaintiff's Complaint does not bring a NEPA

---

[3] It should be noted that nothing in the 2001 or 2007
Settlement Agreements prevented Plaintiff from bringing a claim
under NEPA rather than as a contract enforcement action.  See,
e.g., ECF No. 214-4, at ¶ 17 (reserving the right of Plaintiff to
bring subsequent actions challenging Defendants' compliance with
their legal obligations to conduct adequate archaeological
surveys and marine resource studies).

action, and the associated motions, nonjury trial, and Court orders did not address this higher standard.

Moreover, even if this were a NEPA action, vactur of the final EIS is not necessarily required. "When new information emerges after the circulation and public comment period of the [draft] EIS, it may be validly included in the [final] EIS without recirculation." Id. at 873. Further, an agency "need not supplement an EIS every time new information comes to light after the EIS is finalized." Id. (quoting Marsh v. Or. Natural Res. Council, 490 U.S. 360, 373 (1989)). In this case, if the new archaeological surveys or marine resources studies create "significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts," a supplemental EIS may be appropriate. See 32 C.F.R. § 651.5(g)(1)(ii); see also Westlands Water, 376 F.3d at 837 (a supplemental EIS is required if a new proposal "will have a significant impact on the environment in a manner not previously evaluated and considered.") (citation omitted). Alternatively, Defendants may prepare an environmental report (such as a reevaluation) or an environmental assessment. N. Idaho Cmty. Action Network v. U.S. Dep't of Transp., 545 F.3d 1147, 1157 (9th Cir. 2008).

Notwithstanding the Court's finding that the 2001 and 2007 Settlement Agreements do not require the withdrawal of the final EIS or ROD at this time, the 2007 Settlement Agreement does

13

obligate Defendants to act in a manner consistent with applicable federal law, including the provisions of NEPA.  See ECF No. 214-4, ¶ 18.  In these circumstances, the Court finds that it is appropriate for the Army to determine whether the results of the additional archaeological surveys and the marine resources studies require any supplemental NEPA documentation under 32 C.F.R. § 651.5(g)(1), including, but not limited to, a supplemental EIS or a new final EIS.  For these reasons, the Court concludes that the language contained in paragraph 5 of the Court's Proposed Order is appropriate and should be adopted.

**F.    Ban on Live-Fire Training**

Although the parties agree that there should be a Court-imposed ban on live-fire training at MMR, they disagree as to the length of the ban.  Plaintiff proposes a ban until completion of a new final EIS and ROD; Defendants propose a ban only until the additional archaeological surveys and marine resources studies are completed.  See ECF No. 214-9, ¶ 5; ECF No. 213, ¶ II.  Having found that setting aside the final EIS and ROD is not warranted, see supra Section E., the Court finds that Defendants' timeline is appropriate and recommends that paragraph 6 of the Court's Proposed Order be adopted.

**G.    Scope of Remedy**

Defendants' proposed order includes a section outlining the scope of the remedy order:

> Fulfillment of the terms of Paragraph I of
> this Order will remedy all existing breaches
> of the 2001 Settlement Agreement and 2007
> Settlement Agreement, and will satisfy and
> discharge the Defendants' remaining
> obligations under the [2001 Settlement
> Agreement] and the [2007 Settlement
> Agreement], to conduct archaeological surveys
> and marine resources studies as part of the
> preparation of the [EIS] for military training
> activities at MMR. The provisions of
> Paragraph I of this Order supersedes the
> disputed provisions of the 2001 and 2007
> Settlement Agreements addressed in this
> court's Orders of October 27, 2010 [Summary
> Judgment Order] and September 30, 2011
> [FOFCOL].

ECF No. 213, ¶ III.  Plaintiff asks the Court to decline to include such broad language in its remedy order.  <u>See</u> ECF No. 216, at 10-13.

Defendants did not provide a legal basis for this proposed section from the text of the settlement agreements, case law, or statutory authority in any of their briefing.  Given this lack of authority, the Court finds that Defendants' proposed language is not supported in the record.  Therefore, the Court concludes that Defendants' proposed language in paragraph III of their proposed order is inappropriate and should not be included in the Court's Proposed Order.

<u>CONCLUSION</u>

In accordance with the foregoing, the Court HEREBY FINDS AND RECOMMENDS that the Proposed Order Regarding Remedy for Defendants' Settlement Violations, attached to the Findings and

Recommendation as Exhibit 1, be adopted as an Order of this Court.

    IT IS SO FOUND AND RECOMMENDED.

    DATED: HONOLULU, HAWAII, FEBRUARY 28, 2012.



_____
Richard L. Puglisi
United States Magistrate Judge


<u>MALAMA MAKUA V. PANETTA ET AL.</u>; CIVIL NO. 09-00369 SOM-RLP;
FINDINGS AND RECOMMENDATION REGARDING REMEDY FOR DEFENDANTS'
SETTLEMENT VIOLATIONS

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MALAMA MAKUA, a Hawaiʻi non-<br>profit corporation,<br><br>　　　　　Plaintiff,<br><br>　　　　　vs.<br><br><br>LEON E. PANETTA, Secretary of<br>Defense; and JOHN McHUGH,<br>Secretary of the United States<br>Department of the Army,<br><br>　　　　　Defendants. | ) CIVIL NO. 09-00369 SOM-RLP<br>)<br>) PROPOSED ORDER REGARDING REMEDY<br>) FOR DEFENDANTS' SETTLEMENT<br>) VIOLATIONS (EXHIBIT 1);<br>) APPENDIX A<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

PROPOSED ORDER REGARDING REMEDY
FOR DEFENDANTS' SETTLEMENT VIOLATIONS

On August 12, 2009, Plaintiff Malama Makua ("Plaintiff"
or "Malama Makua") filed its Complaint against Defendants Leon E.
Panetta and John McHugh's (collectively "Defendants" or "the
Army") (ECF No. 1), alleging violations of the Settlement
Agreement and Stipulated Order, dated October 4, 2001 ("2001
Settlement Agreement"), and the Joint Stipulation Re: Partial
Settlement of Plaintiff's Motion to Enforce the October 4, 2001
Settlement Agreement and Stipulated Order, dated January 8, 2007
("2007 Settlement Agreement").

On November 18, 2009, the Court issued an Order
Granting in Part and Denying in Part Defendants' Motion to
Dismiss (ECF No. 23). On October 27, 2010, the Court issued an

Order Granting in Part and Denying in Part Cross-Motions for
Summary Judgment (ECF No. 96)

From June 21 to 23, 2011, the Court held a nonjury
trial on the issues that remained after summary judgment.  On
September 30, 2011, the Court issued its Findings of Fact;
Conclusions of Law; Order Determining that the Army Breached the
2007 Settlement Agreement in Two Ways, But Not in Other Ways (ECF
No. 206).

In compliance with a court-ordered briefing schedule,
the parties filed proposed orders and memoranda setting forth
their respective positions regarding the proper remedy for
Defendants' settlement violations.  On February 27, 2012, United
States Magistrate Judge Richard L. Puglisi held a hearing on the
remedy issue, and on February 28, 2012, Judge Puglisi issued a
Findings and Recommendation Regarding Remedy for Defendants'
Settlement Violations.

Now, therefore, the Court being fully advised in the
premises, IT IS ORDERED as follows:

(1)  <u>Archaeological Surveys</u>.  Defendants shall complete
subsurface archaeological surveys of Areas A through F as
identified in Exhibit 1 to Dr. Laurie Lucking's April 7, 2010
deposition, attached hereto as Appendix A, in accordance with the
terms and conditions set forth in paragraph 6(c) of the 2001
Settlement Agreement and paragraphs 1, 5, and 9 of the 2007
Settlement Agreement.

(2) <u>Marine Resources Studies</u>.  Defendants shall complete one or more studies to determine whether limu and other marine resources (e.g., octopus and sea cucumber) near Makua Beach and in the muliwai on which Waianae Coast residents rely for subsistence, in accordance with the terms and conditions set forth in paragraphs 6, 7, and 10 of the 2007 Settlement Agreement.  The studies shall specify whether arsenic, if present in the limu or other marine resources, is organic or inorganic and shall determine background contamination by testing limu and other marine resources at locations in Hawaii other than Makua Beach.

(3)  <u>Incorporation of Results Into Final EIS</u>. Defendants shall incorporate into the Final Environmental Impact Statement ("EIS") for Military Training Activities at Makua Military Reservation ("MMR"), dated June 2009 ("Final EIS"), the results of the archaeological surveys and the marine resources studies conducted pursuant to paragraphs 1 and 2 above, in accordance with the terms and conditions set forth in paragraph 13 of the 2007 Settlement Agreement.

(4)  <u>Public Review and Comment</u>.  After completing the additional archaeological surveys and marine resources studies described in paragraphs 1 and 2 above, Defendants shall comply with the public review and comment obligations set forth in paragraphs 11 and 12 of the 2007 Settlement Agreement.

Defendants shall not be required to accept additional comments on the previously issued Final EIS.

(5) <u>Setting Aside Final EIS and ROD</u>. The Final EIS and associated Record of Decision, dated July 16, 2009 ("ROD"), remain in effect and are not set aside at this time. In accordance with the terms and conditions set forth in paragraph 18 of the 2007 Settlement Agreement, Defendants shall determine whether the results of the archaeological surveys and the marine resources studies conducted pursuant to paragraphs 1 and 2 above require any supplemental National Environmental Policy Act, 42 U.S.C. § 4321 <u>et seq.</u> ("NEPA"), documentation under 32 C.F.R. § 651.5(g)(1), including, but not limited to, a supplemental EIS or a new Final EIS.

(6) <u>Ban on Live-Fire Training</u>. No live-fire training shall be conducted at MMR until Defendants complete the analyses and actions described in paragraphs 1 through 4 above, except as provided pursuant to paragraph 15(b) of the 2001 Settlement Agreement.

IT IS SO ORDERED.

///

///

///

///

///

///

DATED: HONOLULU, HAWAII, _____, 2012.



_____
Susan Oki Mollway
Chief United States District Judge


MALAMA MAKUA V. PANETTA ET AL.; CIVIL NO. 09-00369 SOM-RLP;
PROPOSED ORDER REGARDING REMEDY FOR DEFENDANTS' SETTLEMENT
VIOLATIONS



**Makua Military Reservation**
Proposed Subsurface Survey Areas

Figure 2

APPENDIX A