IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MĀLAMA MĀKUA, a Hawai`i non-profit corporation, | ) ) ) | CIVIL NO. 09-00369 SOM/RLP |
| Plaintiff, | ) ) | ORDER ADOPTING IN PART AND MODIFYING IN PART FEBRUARY |
| vs. | ) ) | 28, 2012, FINDINGS AND RECOMMENDATION REGARDING |
| ROBERT GATES, Secretary of Defense; and JOHN McHUGH, Secretary of the United States Department of the Army, | ) ) ) ) ) | REMEDY FOR DEFENDANTS' SETTLEMENT VIOLATIONS; ORDER REGARDING REMEDIES |
| Defendants. | ) ) ) | |

**ORDER ADOPTING IN PART AND MODIFYING IN PART
FEBRUARY 28, 2012, FINDINGS AND RECOMMENDATION
REGARDING REMEDY FOR DEFENDANTS' SETTLEMENT VIOLATIONS;
ORDER REGARDING REMEDIES**

**I.      INTRODUCTION AND FACTUAL BACKGROUND.**

This case grows out of a 2001 settlement agreement in which Defendants ("the Army") agreed to complete an environmental impact statement ("EIS") addressing the effects of military training with live ammunition at the Makua Military Reservation ("MMR") in West Oahu, Hawaii. See Complaint for Declaratory Judgment and Injunctive Relief ¶ 19, Aug. 12, 2009, ECF No. 1; Settlement Agreement and Stipulated Order ¶ 1, Oct. 4, 2001, ECF No. 62-2.  As part of the settlement, the Army was to conduct and complete "surface and subsurface archaeological surveys of all areas within the CCAAC [Company Combined Arms Assault Course] training area circumscribed by the south firebreak road," except

for areas suspected of containing Improved Conventional Munitions.  Id. ¶ 6(c), ECF No. 62-2.

The 2001 settlement agreement also required the Army to "[c]omplete studies of potential contamination of soil, surface water, and ground water, and of potential impacts on air quality, associated with the proposed training activities at MMR."  Id. ¶ 6(a), ECF No. 62-2.  The studies were to evaluate whether there was the potential of contamination to "the muliwai [brackish water pools near mouths of streams], or any marine resource or wildlife on or near Mākua Beach."  Id.  If the studies revealed a likelihood of contamination, the Army was to "undertake additional studies of the[] resources (e.g., testing of fish, limu and other marine resources on which area residents rely for subsistence; testing of the muliwai for contamination)."  Id.

This lawsuit is not Mālama Mākua's first attempt to enforce the 2001 settlement agreement.  An earlier attempt led to a 2007 settlement agreement, in which the Army similarly agreed to conduct "surface and subsurface archaeological surveys of all areas within the Company Combined-Arms Assault Course circumscribed by the south firebreak road," except for areas suspected of containing ICMs.  Joint Stipulation Re: Partial Settlement of Plaintiff's Motion to Enforce the October 4, 2001 Settlement Agreement and Stipulated Order ¶ 1, Jan. 8, 2007, ECF No. 62-3.  The 2007 settlement also obligated the Army to conduct

2

"one or more studies to determine whether fish, limu, shellfish, and other marine resources near Mākua Beach and in the muliwai on which area residents rely for subsistence are contaminated by substances associated with the proposed training activities at MMR." Id. ¶ 6.

The present action began with four claims relating to alleged breaches of the 2001 and 2007 settlement agreements. The First Claim for Relief asserted that the Army had failed to complete subsurface archeological surveys pursuant to paragraph 6(c) of the 2001 settlement agreement and paragraph 1 of the 2007 settlement agreement. The Second Claim for Relief asserted that the Army had failed to complete marine resource contamination studies required by paragraph 6(a) of the 2001 settlement agreement and paragraph 6 of the 2007 settlement agreement. The Third Claim for Relief asserted that the Army had failed to seek public input regarding archaeological surveys and contamination studies, as required by paragraphs 11 and 12 of the 2007 settlement agreement. The Fourth Claim for Relief asserted that the Army had failed to incorporate archaeological surveys and contamination studies into the Final EIS, as required by paragraphs 1, 6, and 13 of the 2007 settlement agreement. See Complaint, ¶¶ 53-60.

On November 18, 2009, the court dismissed the Third and Fourth Claims for Relief. See Order Granting in Part and Denying in Part Defendants' Motion to Dismiss, Nov. 18, 2009, ECF No. 23.

On October 27, 2010, the court ruled on cross-motions for summary judgment regarding the remaining claims. The court's ruling did not resolve all remaining issues. In relevant part, the court granted summary judgment in favor of Mālama Mākua, ruling that the Army had breached the settlement agreements by not conducting a survey of "all areas" of the Company Combined Arms Assault Course, including land designated as Areas A to F on Exhibit 1 of the April 7, 2010, deposition of Laurie Lucking. The court also ruled that, to the extent the Army had not tested background contamination of limu and had not determined whether the arsenic detected was harmful to human health, such failures breached its settlement obligations. See Order Granting in Part and Denying in Part Cross-Motions for Summary Judgment, Oct. 27, 2010, ECF No. 96. Related issues remained for trial.

This court held a nonjury trial on June 21 to 23, 2011. On September 30, 2011, this court issued its Findings of Fact; Conclusions of Law; Order Determining that the Army Breached the 2007 Settlement Agreement in Two Ways, But Not in Other Ways. See ECF No. 206. The court ruled that the Army had breached the 2007 settlement agreement by failing to test anything qualifying as an "other marine resource" and by failing to test any type of

limu actually eaten by area residents. In all other respects, the court determined that no breach had been proven. Id.

This court asked Magistrate Judge Richard L. Puglisi to address the parties' dispute as to what remedies should be ordered given the Army's settlement agreement breaches. On February 28, 2012, Magistrate Judge Puglisi issued his Findings and Recommendation Regarding Remedy for Defendants' Settlement Violations ("F&R"). See ECF No. 220. Magistrate Judge Puglisi attached a proposed order to his F&R. ("Proposed Order"). See id.

On March 13, 2012, both the Army and Mālama Mākua filed objections to the F&R. See ECF Nos. 222 and 223. After de novo review of those portions of the F&R that the Army and Mālama Mākua have objected to, and after reviewing for clear error the other portions of the F&R, the court adopts the careful, detailed, and well-reasoned F&R, with the modifications set forth below.

**II.     STANDARD.**

This court reviews de novo those portions of an F&R to which objection is made and may accept, reject, or modify, in whole or in part, the F&R. The court may receive further evidence on the matter or recommit it to the Magistrate Judge with instructions. The court may accept those portions of the Magistrate Judge's F&R that are not objected to if it is

satisfied that there is no clear error on the face of the record. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Local Rule 74.2; Int'l Longshore & Warehouse Union, Local 142, AFL-CIO v. Foodland Super Market Ltd., 2004 WL 2806517, *1 (D. Haw. Sept. 15, 2004); Stow v. Murashige, 288 F. Supp. 2d 1122, 1127 (D. Haw. 2003), aff'd, 389 F.3d 880 (9th Cir. 2004); Abordo v. State of Hawaii, 902 F. Supp. 1220 (D. Haw. 1995); see also Campbell v. United States Dist. Court, 501 F.2d 196, 206 (9th Cir. 1974).

**III.    ANALYSIS.**

The F&R and the Proposed Order attached thereto suggested six remedies. The court adopts the suggested remedies with the following modifications.

**A.    First Claim for Relief--Archaeological Surveys.**

On October 27, 2010, the court granted summary judgment in favor of Mālama Mākua, ruling that the Army had breached the settlement agreements by not conducting a survey of "all areas" of the Company Combined Arms Assault Course, including land designated as Areas A to F on Exhibit 1 of the April 7, 2010, Deposition of Laurie Lucking. See Order Granting in Part and Denying in Part Cross-Motions for Summary Judgment, Oct. 27, 2010, ECF No. 96.

The Proposed Order suggested the following remedy for the Army's archaeological survey violation:

> Defendants shall complete subsurface
> archaeological surveys of Areas A through F

>>as identified in Exhibit 1 to Dr. Laurie
Lucking's April 7, 2010 deposition, attached
hereto as Appendix A, in accordance with the
terms and conditions set forth in paragraph
6(c) of the 2001 Settlement Agreement and
paragraphs 1, 5, and 9 of the 2007 Settlement
Agreement.

Proposed Order at 2.

Because neither party has objected to this remedy, and because the court determines that it is an appropriate remedy, the court adopts this portion of the F&R and Proposed Order.

### B.   Second Claim for Relief--Marine Resource Studies.

On October 27, 2010, the court ruled that, to the extent the Army had not tested background contamination of limu and had not determined whether the arsenic detected was harmful to human health, the Army had breached its settlement obligations. See Order Granting in Part and Denying in Part Cross-Motions for Summary Judgment, Oct. 27, 2010, ECF No. 96.

On September 30, 2011, the court further ruled that the Army had breached the 2007 settlement agreement by failing to test anything qualifying as an "other marine resource" and by failing to test limu eaten by area residents. See ECF No. 206.

The F&R and Proposed Order suggested the following as a remedy for those breaches:

>>Defendants shall complete one or more studies
to determine whether limu and other marine
resources (e.g., octopus and sea cucumber)
near Makua Beach and in the muliwai on which
Waianae Coast residents rely for subsistence,
in accordance with the terms and conditions

7

>             set forth in paragraphs 6, 7, and 10 of the
>             2007 Settlement Agreement.  The studies shall
>             specify whether arsenic, if present in the
>             limu or other marine resources, is organic or
>             inorganic and shall determine background
>             contamination by testing limu and other
>             marine resources at locations in Hawaii other
>             than Makua Beach.

Proposed Order at 3.

The Army objects to this proposed remedy, but only to the extent it requires the Army to test limu and other marine resources found in the muliwai.  The Army says that limu and other marine resources were not found in the muliwai and that it should not be required to conduct a study of them in the muliwai.  The Army additionally argues that the Proposed Order is incomplete because it lacks language explaining what the Army is required to do.  Mālama Mākua agrees that deletion of "and in the muliwai" is appropriate and suggests changing "to determine whether" to "of" to give the Army the clarity it desires.  See ECF No. 225 at 2.  Given these concerns, both parties agreed to the following changes at the hearing: "Defendants shall complete one or more studies <u>of</u> ~~to determine whether~~ limu and other marine resources (e.g., octopus and sea cucumber) near Makua Beach ~~and in the muliwai~~ on which Waianae Coast residents rely for subsistence, in accordance with the terms and conditions set forth in paragraphs 6, 7, and 10 of the 2007 Settlement Agreement. . . . "  With these modifications, the court adopts

the F&R regarding the remedy with respect to the marine resource studies.

### C. Incorporation of Results Into Final EIS.

The F&R and Proposed Order suggest the following:

> Defendants shall incorporate into the Final Environmental Impact Statement ("EIS") for Military Training Activities at Makua Military Reservation ("MMR"), dated June 2009 ("Final EIS"), the results of the archaeological surveys and the marine resources studies conducted pursuant to paragraphs 1 and 2 above, in accordance with the terms and conditions set forth in paragraph 13 of the 2007 Settlement Agreement.

Proposed Order at 3.

The Army does not object to this language. Mālama Mākua appears to agree to the substance of this paragraph, but would like it to also order a new Final EIS and record of decision ("ROD") and require the Army to respond to comments concerning the new EIS in its entirety, rather than just the new studies. See Plaintiff Mālama Mākua's Proposed Order re: Remedy, ¶ 4, ECF No. 214-9. The issue of a new Final EIS and ROD and the scope of public comment are addressed below, making it necessary to include here only a reference to that later discussion. Accordingly, the court adopts this portion of the Proposed Order, with the addition of that reference, as an appropriate remedy. Specifically, this court modifies the Proposed Order by including

the following before "the results": "or such other document as they determine is appropriate pursuant to paragraph 5 below."

### D. Public Review and Comment and Setting Aside the Final EIS and ROD.

With respect to the archaeological surveys and marine resource studies discussed above, paragraph 11 of the 2007 settlement agreement requires the Army to put them out

> for public review and comment, including review by the technical assistants provided for in paragraph 9 of the Settlement Agreement, pursuant to 40 C.F.R. § 1502.19 and pt. 1503.  Each such comment period shall remain open for a minimum of sixty (60) days and may be held contemporaneously or separately, at Defendants' discretion.  Each public comment period shall be publicized pursuant to 40 C.F.R. § 1506.6, including, but not limited to, notice pursuant to 40 C.F.R. § 1506.6(b)(1) to all members of the public who requested to be added to the mailing list for the EIS.  During at least one comment period provided for herein, Defendants shall accept comment on all aspects of the EIS.

2007 Settlement Agreement ¶ 11, ECF No. 214-4.

Paragraph 12 of the 2007 settlement agreement further provides:

> Defendants shall hold at least one public meeting to receive comments during each comment period described in paragraph 11.  If the comment periods run contemporaneously, Defendants may hold a single public meeting during the comment period.  All public meetings required by this paragraph shall be conducted pursuant to paragraph 5 of the Settlement Agreement.

2007 Settlement Agreement ¶ 12, ECF No. 214-4.

> Paragraph 13 of the 2007 settlement agreement provides:
>
> Defendants shall incorporate in the Final EIS an analysis of the results of the archaeological surveys conducted pursuant to paragraph 1 and the marine resource studies conducted pursuant to paragraph 6. Defendants shall assess, consider and respond to all public comments on such studies and surveys pursuant to 40 C.F.R. § 1503.4.

2007 Settlement Agreement ¶ 13, ECF No. 214-4.

> The Proposed Order suggests the following language:
>
> After completing the additional archaeological surveys and marine resources studies described in paragraphs 1 and 2 above, Defendants shall comply with the public review and comment obligations set forth in paragraphs 11 and 12 of the 2007 Settlement Agreement. Defendants shall not be required to accept additional comments on the previously issued Final EIS.

Proposed Order at 3-4. Mālama Mākua argues that this proposed language fails to take into account the public comment obligations under paragraph 13 of the 2007 settlement agreement. The Army, on the other hand, does not object to the Proposed Order's treatment of public review and comment. Nor does the Army object to the inclusion of the requested reference to paragraph 13. Accordingly, this part of the Proposed Order is modified to state: ". . . Defendants shall comply with the public review and comment obligations set forth in paragraphs 11, 12, and 13 of the 2007 Settlement Agreement. . . ." In addition, for consistency throughout the order, the court modifies the next sentence to read: "Defendants may accept additional comments on

11

the previously issued Final EIS, but are not required to do so unless otherwise ordered in accordance with paragraph 5 below."

The Proposed Order then suggests the following language:

> The Final EIS and associated Record of Decision, dated July 16, 2009 ("ROD"), remain in effect and are not set aside at this time. In accordance with the terms and conditions set forth in paragraph 18 of the 2007 Settlement Agreement, Defendants shall determine whether the results of the archaeological surveys and the marine resources studies conducted pursuant to paragraphs 1 and 2 above require any supplemental National Environmental Policy Act, 42 U.S.C. § 4321 et seq. ("NEPA"), documentation under 32 C.F.R. § 651.5(g)(1), including, but not limited to, a supplemental EIS or a new Final EIS.

Proposed Order at 4.[1]

The Army does not object to the Proposed Order's treatment of public review and comment or the recommendation that the Final EIS and ROD not be set aside. Mālama Mākua, on the

---

[1] Paragraph 18 of the 2007 settlement agreement states:

Nothing in this Stipulation relieves Defendants of the obligations to act in a manner consistent with applicable federal, state, or local law, and applicable appropriations law.  Defendants maintain that no provision of this Agreement shall be interpreted or constitute a commitment or requirement that Defendants obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other applicable law or regulation.  Plaintiff does not agree that the Anti-Deficiency Act applies to this court order and reserves the right to so argue in any subsequent action to enforce the terms of this Stipulation.

other hand, contends that the court must set aside the Final EIS and ROD to give Mālama Mākua the benefit of its settlement bargain.  This court determines that a middle ground is appropriate under the circumstances and orders that the language be modified to state:

> The Final EIS and associated Record of Decision, dated July 16, 2009 ("ROD"), remain in effect and are not set aside at this time. Defendants shall determine whether applicable law and the results of the archaeological surveys and the marine resources studies conducted pursuant to paragraphs 1 and 2 above require a new Final EIS and ROD, or any change to, modification of, or supplement to those documents.  At the earliest practicable time (even if the actual new Final EIS and ROD, or any change to, modification of, or supplement to those documents has not been completed), Defendants shall inform Plaintiff of their determination and the reasons for the determination, so that Plaintiff may, if appropriate, object to the determination.  In the event an objection is raised, the parties shall meet and confer in an effort to resolve any dispute before seeking a judicial resolution.

The court disagrees with Mālama Mākua's contention that the Final EIS and ROD must be set aside at this time to give it the benefit of its bargain.  This is a breach-of-settlement-agreement case, not a free-standing challenge to the Final EIS or ROD under the National Environmental Policy Act ("NEPA").  The remedy the court has fashioned requires the Army to conduct the bargained-for archaeological surveys and marine resource studies that the Army has failed to conduct.  These surveys and studies

were agreed to when the parties resolved their disputes concerning the Army's failure to prepare an EIS that evaluated the effects of live-fire military training at MMR.  Rather than erase at this time the work done by the Army in its existing Final EIS and ROD, the court will maintain the status quo until the effect of the required archaeological surveys and the marine resources studies is determined at a later date.

Given the court's ban on live-fire military training at MMR, discussed below, the court sees no prejudice visited on Mālama Mākua by this procedure.  Whether a comprehensive new Final EIS and ROD are required, or whether an abbreviated new Final EIS, Supplemental EIS, or some other procedure is allowed, may be addressed on a fuller record.  The court is not deciding this issue at this time.  Once the archaeological surveys and marine resource studies are completed, any decision as to what the next step should be will be more informed.  Even if, as Mālama Mākua argues, the issue is one of law, the application of law will be clearer in light of the facts.  It may well be that, before live-fire military training may be renewed at MMR, the Army must reexamine its ROD based on the results of the archaeological surveys and the marine resources studies.  Then again, the results of those surveys and studies may indicate that no changes need be made.  Keeping the status quo until a more

informed decision can be made preserves the rights of both parties.

### E.   Ban on Live-Fire Training.

Magistrate Judge Puglisi proposed the following ban on live-fire military training at MMR: "No live-fire training shall be conducted at MMR until Defendants complete the analyses and actions proposed in paragraphs 1 through 4, except as provided pursuant to paragraph 15(b) of the 2001 Settlement Agreement." Proposed Order at 4.  To preserve the parties' rights under the settlement agreements, the court modifies this language to read: "No live-fire military training shall be conducted at MMR until this court orders that it be allowed or the parties so stipulate."  This modification ensures that live-fire military training at MMR will not resume until after a decision has been made as to whether a new, supplemental, or abbreviated Final EIS and ROD must be prepared, or as to whether some other procedure is appropriate.

### IV.   ORDER REGARDING REMEDIES

1.   Defendants shall complete subsurface archaeological surveys of Areas A through F as identified in Exhibit 1 to Dr. Laurie Lucking's April 7, 2010 deposition, attached hereto as Appendix A, in accordance with the terms and conditions set forth in paragraph 6(c) of the 2001 Settlement Agreement and paragraphs 1, 5, and 9 of the 2007 Settlement Agreement.

    2. Defendants shall complete one or more studies of limu and other marine resources (e.g., octopus and sea cucumber) near Makua Beach on which Waianae Coast residents rely for subsistence, in accordance with the terms and conditions set forth in paragraphs 6, 7, and 10 of the 2007 Settlement Agreement.  The studies shall specify whether arsenic, if present in the limu or other marine resources, is organic or inorganic and shall determine background contamination by testing limu and other marine resources at locations in Hawaii other than Makua Beach.

    3. Defendants shall incorporate into the Final Environmental Impact Statement ("EIS") for Military Training Activities at Makua Military Reservation ("MMR"), dated June 2009 ("Final EIS"), or such other document as they determine is appropriate pursuant to paragraph 5 below, the results of the archaeological surveys and the marine resources studies conducted pursuant to paragraphs 1 and 2 above, in accordance with the terms and conditions set forth in paragraph 13 of the 2007 Settlement Agreement.

    4. After completing the additional archaeological surveys and marine resources studies described in paragraphs 1 and 2 above, Defendants shall comply with the public review and comment obligations set forth in paragraphs 11, 12, and 13 of the 2007 Settlement Agreement.  Defendants may accept additional

comments on the previously issued Final EIS, but are not required to do so unless otherwise ordered in accordance with paragraph 5 below.

   5. The Final EIS and associated Record of Decision, dated July 16, 2009 ("ROD"), remain in effect and are not set aside at this time.  Defendants shall determine whether applicable law and the results of the archaeological surveys and the marine resources studies conducted pursuant to paragraphs 1 and 2 above require a new Final EIS and ROD, or any change to, modification of, or supplement to those documents.  At the earliest practicable time (even if the actual new Final EIS and ROD, or any change to, modification of, or supplement to those documents has not been completed), Defendants shall inform Plaintiff of their determination and the reasons for the determination, so that Plaintiff may, if appropriate, object to the determination.  In the event an objection is raised, the parties shall meet and confer in an effort to resolve any dispute before seeking a judicial resolution.

   6. No live-fire training shall be conducted at MMR until this court orders that it be allowed or the parties so stipulate.

   7. Defendants shall complete the required archaeological surveys and marine resource studies within a reasonable time.  Beginning with the October 2012 quarterly

progress report, Defendants shall update the court on the progress of these surveys and studies in the quarterly progress reports they are already preparing and filing in Civil No. 00-00813 SOM.  If no progress is being made on the surveys and studies, Defendants shall explain why no progress is being made.

     IT IS SO ORDERED.

     DATED: Honolulu, Hawaii, June 20, 2012.



     /s/ Susan Oki Mollway
     Susan Oki Mollway
     Chief United States District Judge

Mālama Mākua v. Robert Gates, et al., Civ. No. 09-00369 SOM/RLP; ORDER ADOPTING IN PART AND MODIFYING IN PART FEBRUARY 28, 2012, FINDINGS AND RECOMMENDATION REGARDING REMEDY FOR DEFENDANTS' SETTLEMENT VIOLATIONS; ORDER REGARDING REMEDIES



**APPENDIX A**